**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| PAY AS YOU GO, LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 7:26-cv-00245-DC |
| | § | |
| v. | § | |
| | § | |
| VIASAT, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT VIASAT, INC.'S MOTION UNDER FED. R. CIV. P. 12(b)(1)**
**TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF STANDING**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . ii

INTRODUCTION . . . . . 1

BACKGROUND . . . . . 1

A. The Rothschild Assertion Entities, Their Parent PAM, and Owner Mr. Rothschild . . . . . 1

B. Mr. Rothschild and PAM Globally License the Assertion Entities' Patents . . . . . 2

1. Mr. Rothschild's Global License to Valve . . . . . 3

2. Mr. Rothschild's Global License Covering Open Source Software . . . . . 5

3. Mr. Rothschild and PAM Offer and Likely Grant a Global License to Discord . . 6

4. Mr. Rothschild and PAM Offer a Global License to Viasat . . . . . 7

ARGUMENT . . . . . 9

I. Pay As You Go Lacks Standing to Bring This Action . . . . . 9

A. Standing to Bring Infringement Claims Requires the Ability to Exclude, Which Cannot Exist if Another Party Can License the Patent-in-Suit . . . . . 9

B. Because Both Patent Asset Management and Mr. Rothschild Can Grant Royalty-Free Licenses to the Patent-in-Suit, Plaintiff Cannot Exclude Viasat From Practicing the Patents, and Thus Cannot Bring This Case . . . . . 11

II. Pay As You Go Lacks Constitutional Standing, Requiring Dismissal . . . . . 12

III. If the Court Does Not Dismiss the Action, It Should Grant Jurisdictional Discovery . . . 13

CONCLUSION . . . . . 15

**TABLE OF AUTHORITIES**

*Cases* Page

*A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*,
176 F.4th 1326 (Fed. Cir. 2026) . . . . . 1, 10-13

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) . . . . . 12, 13

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
No. 16-453, 2017 WL 3668597 (D. Del. Aug. 24, 2017) . . . . . 11-12

*Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*,
604 F.3d 1354 (Fed. Cir. 2010) . . . . . 10, 11

*Attridge v. Colonial Sav. F.A.*,
No. 20-205, 2023 WL 6444894 (W.D. Tex. Sept. 28, 2023) . . . . . 10

*Azure Networks, LLC v. CSR PLC*,
771 F.3d 1336 (Fed. Cir. 2014),
*vacated on other grounds*, 575 U.S. 959 (2015) . . . . . 11

*Carver v. Atwood*,
18 F.4th 494 (5th Cir. 2021) . . . . . 9

*Daniels v. Bull Rogers, Inc.*,
No. 17-53, 2018 WL 7297874 (W.D. Tex. Feb. 5, 2018) . . . . . 14

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed. Cir. 2008) . . . . . 13

*De Forest Radio Tel. & Tel. Co. v. United States*,
273 U.S. 236 (1927) . . . . . 6

*Doe v. Dallas Indep. Sch. Dist.*,
194 F. Supp. 3d 551 (N.D. Tex. 2016) . . . . . 9

*Durant v. Greenfield & Fortenberry, LLC*,
No. 16-965, 2018 WL 3155822 (W.D. Tex. June 28, 2018) . . . . . 8

*Gonzalez Maldonado v. Standard Aero (San Antonio), Inc.*,
No. 20-640, 2020 WL 14098087 (W.D. Tex. Aug. 25, 2020) . . . . . 13

*Hernandez v. El Pasoans Fighting Hunger*,
No. 21-55, 2023 WL 417488 (W.D. Tex. Jan. 25, 2023) . . . . . 9

**TABLE OF AUTHORITIES**
*(continued)*


*Cases* — Page

*Hooks v. Landmark Indus., Inc.*,
797 F.3d 309 (5th Cir. 2015) . . . . . 9

*Intell. Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir.),
*cert. denied*, 145 S. Ct. 568 (2024) . . . . . 13

*Keene Corp. v. United States*,
508 U.S. 200 (1993) . . . . . 12

*King v. Life Sch.*,
09 F. Supp. 2d 572 (N.D. Tex. 2011) . . . . . 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) . . . . . 9

*Lamar Co. v. Miss. Transp. Comm'n*,
976 F.3d 524 (5th Cir. 2020) . . . . . 9

*Lowe v. ShieldMark, Inc.*,
No. 23-1786, 2025 WL 893211 (Fed. Cir. Mar. 24, 2025),
*cert. denied*, 146 S. Ct. 207 (2025) . . . . . 10

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
814 F.3d 1343 (Fed. Cir. 2016) . . . . . 11

*Menchaca v. Chrysler Credit Corp.*,
613 F.2d 507 (5th Cir. 1980) . . . . . 10

*Mollan v. Torrance*,
22 U.S. 537 (1824) . . . . . 12

*In re MPF Holdings Us LLC*,
701 F.3d 449 (5th Cir. 2012) . . . . . 13

*NGM Ins. Co. v. Benchmark Util. Contractors, Inc.*,
No. 19-221, 2020 WL 7973918 (W.D. Tex. Feb. 6, 2020) . . . . . 9-10

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) . . . . . 13

**TABLE OF AUTHORITIES**
*(continued)*

*Cases* — Page

*Ornelas v. BMW of N. Am., LLC*,
No. 20-1, 2021 WL 2444972 (W.D. Tex. Feb. 10, 2021) . . . . . 9

*Paradise Creations, Inc. v. UV Sales, Inc.*,
315 F.3d 1304 (Fed. Cir. 2003) . . . . . 12

*Pfizer, Inc. v. Elan Pharm. Rsch. Corp.*,
812 F. Supp. 1352 (D. Del. 1993) . . . . . 9

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) . . . . . 10

*Recor Med., Inc. v. Medtronic Ireland Mfg. Unlimited Co.*,
No. 25-1998, 2026 WL 1463694 (Fed. Cir. May 19, 2026) . . . . . 10

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
402 F.3d 1198 (Fed. Cir. 2005) . . . . . 13

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
427 F.3d 971 (Fed. Cir. 2005) . . . . . 9

*Speedplay, Inc. v. Bebop, Inc.*,
211 F.3d 1245 (Fed. Cir. 2000) . . . . . 12

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (2009) . . . . . 6

*Univ. of Mass. v. L'Oreal S.A.*,
36 F.4th 1374 (Fed. Cir. 2022) . . . . . 13, 14

*Valve Corp. v. Rothschild*,
No. 23-1016 (W.D. Wash.) . . . . . 4

*Vieri v. Braze Inc.*,
No. 25-200, 2026 U.S. Dist. LEXIS 26232 (W.D. Tex. Feb. 6, 2026) . . . . . 9, 10

*Vurimindi v. United States*,
No. 25-23, 2025 WL 5232396 (W.D. Tex. Aug. 28, 2025) . . . . . 14

*WiAV Sols. LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010) . . . . . 10

**TABLE OF AUTHORITIES**
*(continued)*

*Cases* *Page*

*Wild Type, Inc. v. Shuford*,
No. 25-1408, 2026 WL 640722 (W.D. Tex. Jan. 30, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Yost v. United States*,
No. 25-35, 2025 WL 2947776 (W.D. Tex. June 20, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Statutes*

Fed. R. Evid. 408(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 10

*Other Authorities*

*Display Techs. LLC v. Discord Inc.*,
No. 24-703, Docket No. 20-54 (N.D. Cal. Mar. 29, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Display Techs. LLC v. Discord Inc.*,
No. 22-703, Docket No. 20-64 (N.D. Cal. Mar. 29, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Display Techs. LLC v. Discord Inc.*,
No. 22-703, Docket No. 56 (N.D. Cal. July 31, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Standing Order Governing Patent Proceedings* (W.D. Tex. Aug. 2, 2022) (Counts, J.) . . . . . . . 13

*Rothschild Pat. Imaging LLC v. GNOME Found.*,
No. 19-5414, Docket No. 1 (N.D. Cal. Aug. 28, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rothschild Pat. Imaging LLC v. GNOME Found.*,
No. 19-5414, Docket No. 52 (N.D. Cal. May 26, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Valve Corporation v. Rothschild*,
No. 23-1016, Docket No. 75-23 (W.D. Wash. March 28, 2025) . . . . . . . . . . . . . . . . . . . . . . . 7

*Valve Corporation v. Rothschild*,
No. 23-1016, Docket No. 75-24 (W.D. Wash. March 28, 2025) . . . . . . . . . . . . . . . . . . . . . . . 7

*VoiceAge EVS LLC v. HMD Glob. Oy*,
No. 19-1945, Docket No. 8 (D. Del. May 26, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

VoiceAge EVS LLC v. HMD Glob. Oy,
No. 19-1945, Order (D. Del. Jan. 22, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wright et al., 5B Fed. Prac. & Proc. Civ. § 1350 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INTRODUCTION

Plaintiff Pay As You Go, LLC lacks standing to bring this action. As the Federal Circuit has repeatedly held, a patent owner's right to sue is "illusory," and thus cannot support standing, when another party "could moot any suit brought by the plaintiff by granting a royalty-free sublicense to the accused infringer." *A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, 176 F.4th 1326, 1335 (Fed. Cir. 2026). That is so here. PAYG's right to sue is illusory because both its immediate parent, Patent Asset Management, LLC, and its ultimate owner, Leigh Rothschild, can grant a royalty-free sublicense to any accused infringer, including Viasat here. That statement is not hypothetical: they have done so in the past—at least three times in documents that have become public, and likely many more times in documents that remain private. Even now, PAM and Mr. Rothschild can license their subsidiaries' patents, as they confirmed in recent discussions with Viasat. Because PAM and Mr. Rothschild can grant a royalty-free license to the asserted patent, plaintiff Pay As You Go has no standing to bring this action for infringement. And because plaintiff cannot cure this defect, the Court should dismiss this action with prejudice.

## BACKGROUND

### A. The Rothschild Assertion Entities, Their Parent PAM, and Owner Mr. Rothschild

Plaintiff Pay As You Go, LLC ("PAYG") forms a small part of a large web of companies owned by prolific inventor and litigant Leigh M. Rothschild. Mr. Rothschild owns a Florida limited liability company called Patent Asset Management, LLC ("PAM," *see* Ex. 1) and PAM owns the other Rothschild entities, including plaintiff, which is a Wyoming company although it claims to be a Texas company in the complaint. *Compare* Docket No. 1 ¶ 1 *with* Exs. 2, 3 (all exhibits are to the accompanying declaration). The Rothschild assertion entities, which file infringement cases, have no meaningful separation from their parent PAM or its owner Mr.

Rothschild. Mr. Rothschild is owner, executive, manager, or director of the assertion entities (*e.g.*, Exs. 4-23), approves all complaints before the assertion entities file them (Ex. 24 at 47:7-19, 97:21-98:1), conducts settlement negotiations on their behalf (*e.g.*, Ex. 25), opines regarding claim construction of his patents (*e.g.*, Ex. 26), calculates claimed damages (*e.g.*, Exs. 27-31), analyzes asserted claims and claim constructions in their complaints before they file suit (*e.g.*, Ex. 32), avers to their good faith in filing cases (*e.g.*, *id.*), provides declarations supporting their arguments regarding venue (*e.g.*, Exs. 33-37), and stays pending *inter partes* review (*e.g.*, Exs. 38-41), verifies their complaints (*e.g.*, Ex. 42), provides deposition testimony (*e.g.*, Exs. 43, 44), knows the location of their business records and maintains many if not all of them (*e.g.*, Ex. 45, 46), and serves as their designated agent for service of process. *E.g.*, Exs. 1, 4-6.

The assertion entities have no independent finances. As Mr. Rothschild testified, one tax return "is filed under Patent Asset Management with all the subsidiaries reporting on that tax return," and "the PAM tax return then is reported on my personal tax return, my 1040." Ex. 24 at 158:16 to 159:2. When the assertion entities receive settlements, testimony confirmed, "the litigation settlement funds are received by [the assertion entity], and then within a short period of time, they're transferred out of those accounts through one of two paths," and "either go directly to PAM's bank account at TD Bank or "first to PAM's account at First Horizon Bank, and then from there to the PAM TD Bank account, and then ultimately, those funds will be transferred to Mr. Rothschild's personal accounts." Ex. 47 at 153:2-11. The assertion entities "tend to keep a zero balance or effectively a zero balance" in their own bank accounts. *Id.* at 153:24 to 154:2.

### B. Mr. Rothschild and PAM Globally License the Assertion Entities' Patents

Unsurprisingly given the assertion entities' operational and financial dependence on PAM and Mr. Rothschild, both PAM and Mr. Rothschild have and continue to license the assertion

entities' patents. Although there are surely many such licenses lurking under the cover of confidentiality agreements, three examples have become public, and PAM and Mr. Rothschild made just such an offer to Viasat after commencing this litigation.

**1. Mr. Rothschild's Global License to Valve**

On January 11, 2016, Mr. Rothschild executed a global license agreement with Valve Corporation. Ex. 48. This license defined Mr. Rothschild and nominal patent owner Display Technologies jointly as "Licensor," Valve as "Licensee," and stated that "Licensor hereby grants to Licensee and Licensee's Affiliates a non-exclusive, non-transferable (except as provided for in Section 7.1), perpetual, irrevocable, royalty-free, fully paid-up, worldwide license, without the right to sublicense, in and to" a list of twenty patents held by nine entities, plus "all continuations, divisionals, continuations-in-part, extensions, reissues, reexaminations, and any other patents or patent applications claiming priority to or through the patents" on the list. *Id.* §§ 1.5, 3.1. The agreement specifically noted Mr. Rothschild's ability to grant the licenses in it:

> Licensor represents and warrants that as of the Effective Date (a) Licensor is the sole owner of the entire right, title and interest in and to the Licensed Patents, including all rights to enforce and sue for past damages, as reflected by the "Assignee" entities listed in Exhibit C; and (b) Licensor has the right and authority to grant the rights, licenses and releases hereunder on behalf of the entities listed in Exhibit C.

*Id.* § 9.2. Mr. Rothschild further granted conditional licenses based on potential future events, stating that "[i]n the event that Licensor gains control or ownership of any patent" on a list, the license will include patents "which Licensor gains ownership or control over." *Id.* § 1.5. The agreement emphasized Mr. Rothschild's centrality to the transaction: it stated that under certain circumstances, Mr. Rothschild "will have the right to unilaterally terminate this Agreement" (*Id.* § 9.3); its provisions governing warranty and limitations on damages protected Mr. Rothschild personally but not his companies (*id.* §§ 9.3, 9.4); its "Covenant Not to Sue Licensor" protected

Mr. Rothschild but not his companies (*id.* § 3.3); and it allowed Mr. Rothschild personally, but not his companies, to "disclose the fact that a settlement and/or license agreement has been reached with Licensee in connection with any other litigation or enforcement efforts by Licensor with respect to the Licensed Patents." *Id.* § 10.2, subsection 1.1.7.

The global license to Valve contained a confidentiality clause, Ex. 48 § 10; it only became public because of later litigation. *Valve Corp. v. Rothschild*, No. 23-1016 (W.D. Wash.). In that action, Mr. Rothschild and his companies further confirmed the validity of his licenses on their behalf. Valve alleged that Mr. Rothschild breached his global license because Rothschild entities asserted infringement of patents covered by the license, including U.S. Patent No. 8,856,221, nominally owned by a company called Rothschild Broadcast Distribution Systems, LLC, or "RBDS." Ex. 49 ¶¶ 65-77. The '221 patent appeared on Exhibit C to Mr. Rothschild's global license, but RBDS did not. Ex. 48 at 19-20. Mr. Rothschild and other Rothschild defendants moved to dismiss Valve's action—not because they rejected the validity of Mr. Rothschild's global license, but because they *agreed* that Mr. Rothschild's global license governed the Rothschild entities, and thus in their view no case or controversy remained: "Mr. Rothschild and DT [Display Technologies] entered into a Global Settlement and License Agreement covering a number of patents owned by DT and/or other entities controlled by Mr. Rothschild" (Ex. 50 at 6), so "there is no justiciable case or controversy between the parties because Plaintiff has a fully paid-up, irrevocable license and a covenant not to sue from the Rothschild Defendants." *Id.* at 5. The Rothschild defendants thus argued that because Mr. Rothschild's global license remained in effect, "[t]he covenant not to sue therefore also remains in effect" and "also binds RBDS," even though RBDS appeared nowhere in the license to Valve. *Id.* at 11 (citing Ex. 48 § 3.2). Put simply, Mr. Rothschild sought dismissal in the *Valve* case by affirmatively relying on the fact that

he can license patents held by Rothschild entities, binding those entities whether or not they executed or even appeared in a license agreement itself. *See id.*

### 2. Mr. Rothschild's Global License Covering Open Source Software

In 2019, Rothschild Patent Imaging LLC sued the GNOME Foundation, a California non-profit. *Rothschild Pat. Imaging LLC v. GNOME Found.*, No. 19-5414, Docket No. 1 (N.D. Cal. Aug. 28, 2019). The case settled when Mr. Rothschild granted a global license to all of his patents, past and future, covering all open-source software distributed under common software licenses. *Id.*, No. 19-5414, Docket No. 52 (N.D. Cal. May 26, 2020); Ex. 51.[1]

This global license defined the "Rothschild Entities" to include Mr. Rothschild "together with every entity that he directly or indirectly Controls and/or that owns a Rothschild Patent in whole or in part" (Ex. 51 at 2), and further defined the "Rothschild Patents" to include "any and all Patents that name Leigh Rothschild as an inventor, whether or not currently in existence," as well as all patents "owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity." *Id.* It then used these terms to grant a broad license, first to the GNOME Foundation and its past and future affiliates, and then to all open-source software:

> Rothschild, on behalf of himself and the Rothschild Entities, grants a nonexclusive, fully paid-up, irrevocable covenant not to sue (i) Grantee and its Affiliate(s) for any Claim of patent infringement including without limitation with respect to the Rothschild Patent(s), provided that Grantee and its Affiliates, as the case may be, are and remain non-profit organizations; and (ii) any individual or entity anywhere in the world for infringement of the Rothschild Patents solely with respect to Open Source Initiative Approved Software where the Open Source Initiative Approved Software is the material basis for a claim of infringement of the Rothschild Patent(s).

Ex. 51 at 4. The first license to "Grantee and its Affiliate(s)" prevents any claim of patent infringement, of any patent, brought by any company, past, present or future, controlled by Mr.

[1] This license also contained a confidentiality clause, *id.* ¶ 10 at 8; it is public because an open-source activist posted it on the Internet. Ex. 52; https://blog.hansenpartnership.com/-lessons-from-the-gnome-patent-troll-incident/ (*archived at* https://archive.is/L0pEq).

Rothschild. *Id.* It covers both the GNOME Foundation and its "Affiliate(s)," defined as "any and all Entities, past, present, or future, that are or were Controlled" by the GNOME Foundation. *Id.* at 1. The second license bars Mr. Rothschild and the Rothschild Entities from asserting any claim of "infringement of the Rothschild Patents" against "any individual or entity anywhere in the world" concerning any functionality within "Open Source Initiative Approved Software," which includes all software released under a long list of licenses set forth in Schedule 2. *Id.* at 1, 4, 13-15.[2] Thus, using a single document he signed as an individual, Mr. Rothschild licensed *all* developers of software using those licenses to *all* patents, present and future, owned by *all* his companies, present and future. Unlike the license to Valve, *see supra* § B.1, this global license did not list the patents or entities it covered and did not need to do so, because it covered all the "Rothschild Patents" and "Rothschild Entities" as broadly defined in the agreement. *Id.* at 2, 4; *see supra*. In exchange for this license, Mr. Rothschild received an unspecified tax deduction; the Rothschild Entities received nothing. *Id.* at 7. Mr. Rothschild thus granted all users of open-source software a perpetual, royalty-free license on his companies' behalf. *See id.*

**3. Mr. Rothschild and PAM Offer and Likely Grant a Global License to Discord**

In licensing discussions with Discord, Inc., Mr. Rothschild and PAM offered two options: a smaller license covering only certain patents, or "a global license to the 100+ patent portfolio"

[2] These paragraphs use the words "covenant not to sue" rather than "license." But "a non-exclusive patent license is equivalent to a covenant not to sue." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (2009) (citing *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927) and collecting cases). Recognizing this equivalence, in other paragraphs the same agreement uses the term "license." *E.g.*, Ex. 51 ¶ 4 (stating that "any assignment of the rights under this Agreement in connection with a merger or sale of substantially all assets of Grantee shall only extend to the licensed activities and products of Grantee and/or Grantee's Affiliates that are the subject to this Agreement as of the date of the sale, transfer or spin-off"); ¶ 8(a) ("Grantee did not provide any goods or services in exchange for the contribution of this license"); ¶ 8(b) (Mr. Rothschild will "substantiate the contribution by engaging an independent qualified appraiser to perform a qualified appraisal of the license").

including "a license to the 100+ portfolio and future patents into perpetuity." *Display Techs. LLC v. Discord Inc.*, No. 24-703, Docket No. 20-54 (N.D. Cal. Mar. 29, 2024). Mr. Rothschild and PAM later provided more specificity, including a list of patents owned by various Rothschild entities that their global license would cover. *Id.*, Docket No. 20-64 (N.D. Cal. Mar. 29, 2024). These discussions did not immediately yield an agreement; one of the Rothschild entities sued Discord, and the parties eventually settled the action "on terms that do not include, require or contemplate any monetary or equivalent payment by defendant." *Id.*, Docket No. 56 (N.D. Cal. July 31, 2024). A partial copy of their settlement and license agreement later surfaced in other litigation involving Mr. Rothschild; although the complete agreement is not available, presumably because of a confidentiality provision, the Discord agreement appears to include another global license, as its preamble states that its purpose is "to prevent any future claims of patent infringement regarding the Licensed Patents and Covered Patents against Discord or against Covered Third Parties regarding Covered Products," and it includes ten pages after the signature page, likely for the list of patents covered by the global agreement. *Valve Corporation v. Rothschild*, No. 23-1016, Docket No. 75-23 (W.D. Wash. March 28, 2025); *see id.* Docket No. 75-24. Mr. Rothschild and PAM executed this agreement. *See id.*, Docket No. 75-23. Assuming its preamble is accurate, this agreement is another royalty-free global license.

**4. Mr. Rothschild and PAM Offer a Global License to Viasat**

After filing this case, Mr. Rothschild and PAM offered Viasat a proposed "global agreement." Ex. 53. The draft states that "PAM has the right to grant rights, releases and covenants under the PAM CNS Patents (defined below) on behalf of itself and its Affiliates," and defines the "PAM CNS Patents" to include all patents "assigned to PAM or any Affiliate of PAM," "filed and/or acquired by PAM (or any Affiliate of PAM)," "owned and/or controlled by

PAM (or any Affiliate of PAM)," and all patents and applications related to those patents. *Id.* at Preamble, § 1.6.[3] The draft further states that "Rothschild has the right to grant rights, releases and covenants under the Rothschild CNS Patents (defined below) on behalf of itself and its Affiliates," and defines the "Rothschild CNS Patents" to include all patents "assigned to Rothschild or any Affiliate of Rothschild," "filed and/or acquired by Rothschild (or any Affiliate of Rothschild)," "owned and/or controlled by Rothschild (or any Affiliate of Rothschild)," and all patents and applications related to those patents. *Id.* Preamble, § 1.8. The draft defines "Affiliate" to include any company "now or hereafter, directly or indirectly, Controlled by such Party," and defines "Control" to include both "the legal, beneficial, or equitable ownership, directly or indirectly of fifty percent (50%) or more of the securities (or other equity interests)" of a company, or "the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of" a company. *Id.* §§ 1.1, 1.2. So all PAM portfolio companies, including plaintiff PAYG, are "Affiliates" of both PAM and Mr. Rothschild, and their patents are both "PAM CNS Patents" and "Rothschild CNS Patents." PAM and Mr. Rothschild both license "Viasat and its Affiliates," as well as Viasat's suppliers and customers, for a term of three years, to their respective patents. *Id.* §§ 3.1, 4.1; *see supra* n.1. The draft provides for a small payment to plaintiff PAYG, larger payments to PAM and Mr. Rothschild, and nothing for the other Rothschild assertion entities. *Id.* § 5.1. PAM and Mr. Rothschild thus proposed to issue licenses to the assertion entities' patents without any payment to them, including licenses to patents they did not currently own but later acquired. *See id.* As with their other agreements,

[3] Although Mr. Rothschild and PAM stamped the draft global agreement with "FRE 408," this unilateral designation cannot prevent the Court from considering this evidence here. Viasat does not seek to use these communications "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a); *see e.g.*, *Durant v. Greenfield & Fortenberry, LLC*, No. 16-965, 2018 WL 3155822, at *4 (W.D. Tex. June 28, 2018) ("[T]he purpose of the evidence of the settlement here is not used to prove the validity or amount of 'the claim' that was settled.")

PAM and Mr. Rothschild inserted a confidentiality clause into their draft agreement, so if Viasat had signed it, this agreement would likely never have seen the light of day. *Id.* § 8.8.

## ARGUMENT

### I. Pay As You Go Lacks Standing to Bring This Action

#### A. Standing to Bring Infringement Claims Requires the Ability to Exclude, Which Cannot Exist if Another Party Can License the Patent-in-Suit

"Federal courts may only exercise the jurisdiction expressly conferred upon them." *Vieri v. Braze Inc.*, No. 25-200, 2026 U.S. Dist. LEXIS 26232, at *3 (W.D. Tex. Feb. 6, 2026) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Because "[s]ubject-matter jurisdiction is essential for the federal judiciary to hear a case," *Lamar Co. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020), "[w]hen a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction." *Wild Type, Inc. v. Shuford*, No. 25-1408, 2026 WL 640722, at *2 (W.D. Tex. Jan. 30, 2026) (citing *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015)). "The party bringing the action bears the burden of establishing that it has standing." *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (citing *Pfizer, Inc. v. Elan Pharm. Rsch. Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993)); *see also Ornelas v. BMW of N. Am., LLC*, No. 20-1, 2021 WL 2444972, at *2 (W.D. Tex. Feb. 10, 2021). "If a court discovers at any time that it lacks subject-matter jurisdiction, then '*sua sponte* dismissal is mandatory.'" *Hernandez v. El Pasoans Fighting Hunger*, No. 21-55, 2023 WL 417488, at *1 (W.D. Tex. Jan. 25, 2023) (quoting *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021)).

"At any stage in the litigation, any party may move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter-jurisdiction." *Doe v. Dall. Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 558 (N.D. Tex. 2016) (citing *King v. Life Sch.*, 809 F. Supp. 2d 572, 576 (N.D.

Tex. 2011)); *see Vieri*, 2026 U.S. Dist. LEXIS 26232, at *3; *NGM Ins. Co. v. Benchmark Util. Contractors, Inc.*, No. 19-221, 2020 WL 7973918, at *2 (W.D. Tex. Feb. 6, 2020). "A motion to dismiss under Rule 12(b)(1) may mount either a facial or a factual attack on the existence of subject-matter jurisdiction." *Attridge v. Colonial Sav. F.A.*, No. 20-205, 2023 WL 6444894, at *2 (W.D. Tex. Sept. 28, 2023). A motion presenting a "factual attack," like this one, "challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "When resolving such a challenge, a court may look beyond the pleadings and consider the evidence in the record." *Vieri*, 2026 U.S. Dist. LEXIS 26232, at *3 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)); *see* Wright et al., 5B Fed. Prac. & Proc. Civ. § 1350 (4th ed.). "The party asserting jurisdiction bears the burden of proof in a 12(b)(1) motion." *Vieri*, 2026 U.S. Dist. LEXIS 26232, *3 (citing *Ramming*, 281 F.3d at 161). This Court recently decided a factual 12(b)(1) motion in *Vieri*, 2026 U.S. Dist. LEXIS 26232, and is thus familiar with the governing law.

"In a patent infringement suit, Article III standing turns on whether a party can establish that he has an exclusionary right in a patent that, if violated, would cause him legal injury." *Vieri*, 2026 U.S. Dist. LEXIS 26232, at *3 (citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010); *Lowe v. ShieldMark, Inc.*, No. 23-1786, 2025 WL 893211 (Fed. Cir. Mar. 24, 2025), *cert. denied*, 146 S. Ct. 207 (2025)). To suffer legal injury, a patent owner must possess a "non-illusory right to sue." *Recor Med., Inc. v. Medtronic Ireland Mfg. Unlimited Co.*, No. 25-1998, 2026 WL 1463694, at *5 (Fed. Cir. May 19, 2026). "[A] patent owner's retained right to sue is not illusory where the patent owner maintains meaningful control over enforcement and no other party has the ability to interfere with that enforcement right." *A.L.M.*

*Holding*, 176 F.4th at 1333 (citing *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1361-63 (Fed. Cir. 2010)). But when another party "could moot any suit brought by the plaintiff by granting a royalty-free sublicense to the accused infringer," even a "patent owner's right to sue" is "rendered illusory," and it cannot sue. *A.L.M. Holding*, 176 F.4th at 1335 (citing *Mann*, 604 F.3d at 1362); *see, e.g.*, *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1343-44 (Fed. Cir. 2014) , *vacated on other grounds*, 575 U.S. 959 (2015).

### B. Because Both Patent Asset Management and Mr. Rothschild Can Grant Royalty-Free Licenses to the Patent-in-Suit, Plaintiff Cannot Exclude Viasat From Practicing the Patents, and Thus Cannot Bring This Case

Plaintiff's right to sue Viasat is illusory, because both PAM and Mr. Rothschild can freely license any patents held by the Rothschild assertion entities, including the patent in suit here. This statement is not hypothetical: PAM and Mr. Rothschild actually licensed Rothschild assertion entities' patents to Value (*supra* § B.1), gave a breathtakingly broad license to all the Rothschild assertion entities' patents to all developers of open source software (*supra* § B.2), offered a license covering all the Rothschild assertion entities' patents to Discord before litigation and likely granted that license after litigation (*supra* § B.3), and offered a license covering all the Rothschild assertion entities' patents to Viasat during this action. *Supra* § B.4. Although Viasat believes there are many more global licenses lurking under the cover of confidentiality agreements, four is more than enough to show the unfettered ability of PAM and Mr. Rothschild to grant these licenses, and thus to prevent plaintiff, one of the Rothschild assertion entities, from maintaining this suit. *Supra* § I.A; *see, e.g.*, *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1348 (Fed. Cir. 2016) ("If Disney Enterprises could indeed license any entity to manufacture and sell candles having Artificial Flame Technology, Candella would not have had exclusionary rights to the asserted patents."); *Acceleration Bay LLC v. Activision Blizzard, Inc.*,

No. 16-453, 2017 WL 3668597, at *3 (D. Del. Aug. 24, 2017) ("Defendants had the ability to obtain a license from Sony at all relevant times because Sony could have granted Defendants licenses as of late 2006. Because of this, Plaintiff has not shown that it had the right under the patents to exclude the Defendants from engaging in the alleged infringing activity. It therefore could not have been injured as a result. Plaintiff lacks standing to sue Defendants with respect to games covered by the Sony license.") (citation omitted).

It does not matter if the plaintiff owns the patent; a "patent owner's right to sue would be illusory, for example, when its licensee could effectively extinguish it unilaterally by granting a royalty-free sublicense to an accused infringer, without needing the patent owner's consent." *A.L.M. Holding*, 176 F.4th at 1333 n.3 (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000)). It does not matter how PAM and Mr. Rothschild obtained these rights, or how often they exercise them, although Viasat believes discovery would reveal that they have done so fairly often; it matters only that they have them. *See id.* Because both PAM and Mr. Rothschild can freely license any patents held by the Rothschild assertion entities, including the patent in suit here, the plaintiff has suffered no legal injury and has no standing to bring this action.

## II. Pay As You Go Lacks Constitutional Standing, Requiring Dismissal

For this failure, there is no cure. Courts follow "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). Under this rule, "in a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003)).

"[C]onstitutional standing 'is a jurisdictional requirement' that is 'incurable if absent at the initiation of suit.'" *A.L.M. Holding*, 176 F.4th at 1332 (quoting *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir.), *cert. denied*, 145 S. Ct. 568 (2024)). Thus, "'if the original plaintiff lacked Article III initial standing, the suit must be dismissed" *Abraxis*, 625 F.3d at 1364 (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)). Faced with a defect that has no cure, the Court should dismiss this action with prejudice.

## III. If the Court Does Not Dismiss the Action, It Should Grant Jurisdictional Discovery

If the Court does not dismiss this action outright, it should order jurisdictional discovery to determine whether the plaintiff has standing to bring its complaint. Although this Court stays routine discovery until after claim construction, "some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact." *Standing Order Governing Patent Proceedings*, § II (W.D. Tex. Aug. 2, 2022) (Counts, J.).; *Gonzalez Maldonado v. Standard Aero (San Antonio), Inc.*, No. 20-640, 2020 WL 14098087, at *3 (W.D. Tex. Aug. 25, 2020) (quoting *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012)); *see, e.g.*, *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235-36 (Fed. Cir. 2010). When "evidence raises the *possibility* that discovery might" resolve a jurisdictional question, parties are "entitled to jurisdictional discovery before any jurisdictional determination, if one remains necessary, is made." *Univ. of Mass. v. L'Oreal S.A.*, 36 F.4th 1374, 1385 (Fed. Cir. 2022) (emphasis in original) (citing *Nuance*, 626 F.3d at 1233-34); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1294 (Fed. Cir. 2008) (district court abused its discretion in denying discovery on jurisdictional issue).

Here, at minimum, the "evidence raises the *possibility* that discovery might" resolve the jurisdictional question before this Court. *Univ. of Mass.*, 36 F.4th at 1385. The evidence so far

available to Viasat shows that PAM and Mr. Rothschild routinely offer and grant licenses to patents held by the Rothschild assertion entities, including plaintiff. *Supra* §§ B.1 to B.4. The evidence further indicates that PAM and Mr. Rothschild routinely include confidentiality clauses in these licenses, preventing them from becoming public except in relatively rare circumstances. *See id.* It would be an awfully big coincidence if the few agreements that became public were the only agreements that included global licenses; it is much more likely that discovery will reveal many more. Viasat's evidence not only "raises the *possibility* that discovery might" defeat jurisdiction, but shows a strong probability that it would. *Univ. of Mass.*, 36 F.4th at 1385.

Because jurisdiction is a threshold issue that will prevent the case from proceeding, the Court should otherwise stay the case pending resolution of the jurisdictional issue. A "stay is often appropriate when defendants challenge the Court's subject-matter jurisdiction with a 12(b)(1) motion." *Yost v. United States*, No. 25-35, 2025 WL 2947776, at *1 (W.D. Tex. June 20, 2025) (collecting cases). Where, as here, a defendant raises "threshold questions of subject-matter jurisdiction," discovery of issues unrelated to jurisdiction should not proceed; otherwise, the parties "would incur undue burden and expense associated with discovery on claims that this Court may dismiss." *Vurimindi v. United States*, No. 25-23, 2025 WL 5232396, at *2 (W.D. Tex. Aug. 28, 2025); *see also Daniels v. Bull Rogers, Inc.*, No. 17-53, 2018 WL 7297874, at *4 (W.D. Tex. Feb. 5, 2018) ("To avoid placing undue burdens on the parties in a case in which the Court may not have subject matter jurisdiction, the Court confines discovery" to requests "limited solely to facts bearing" on subject matter jurisdiction).

Exactly that occurred in *VoiceAge EVS LLC v. HMD Global Oy*, where defendant HMD Global moved to dismiss for lack of standing because "multiple third-parties appear to have retained the right to license or otherwise 'forgive' HMD's allegedly infringing activities."

*VoiceAge EVS LLC v. HMD Glob. Oy*, No. 19-1945, Docket No. 8 at 10 (D. Del. May 26, 2020). Although the court did not immediately grant the motion, it ordered jurisdictional discovery and stayed the case "pending completion of jurisdictional discovery and a final determination by the Court about whether Plaintiff has standing and the Court has subject matter jurisdiction." *Id.*, Oral Order (D. Del. Jan. 22, 2021). This Court should do the same here. Viasat's arguments against standing are stronger than those in VoiceAge. There, the defendant's motion to dismiss claimed only that others "appear to have" the ability to license; here, Viasat has shown Patent Asset Management actually offering to license Viasat, and three examples of Mr. Rothschild or PAM actually issuing global licenses. If the Court does not dismiss the complaint, it should allow discovery into jurisdiction, but otherwise stay proceedings in this case.

## CONCLUSION

For the reasons stated above, the Court should dismiss this action with prejudice for lack of standing; or, in the alternative, order jurisdictional discovery but otherwise stay the case.

Date: October 12, 2026

Respectfully submitted,

*/s/ James Travis Underwood*
James Travis Underwood
Texas Bar No. 24102587
GILLIAM & SMITH, LLP
7232 Crosswater Avenue
Tyler, Texas, 75703
+1 (903) 934-8450
+1 (903) 934-9257 facsimile
travis@gillamsmithlaw.com

Matthew S. Warren
Erika H. Warren
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
26-245@cases.warrenllp.com

*Attorneys for Defendant Viasat, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2026, I caused the foregoing Motion under Federal Rule of Civil Procedure 12(b)(1) to Dismiss Complaint for Lack of Standing of Defendant Viasat, Inc. to be served on all counsel of record through the Court's electronic filing system.

*/s/ James Travis Underwood*
James Travis Underwood