# EXHIBIT 53

Ethan Ballou <ethan@warrenllp.com>

**Fw: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)**

**Ethan Ballou** <ethan@warrenllp.com> Thu, Oct 8, 2026 at 4:36 PM
To: Ethan Ballou <ethan@warrenllp.com>

**From:** dbennett directionip.com <dbennett@directionip.com>
**Subject: [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas) Date:** August 26, 2026 at 5:43:58 PM PDT
**To:** "Ward, Colin" <Colin.Ward@viasat.com>

**This Message Is From an External Sender**
This message came from outside your organization.

CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION

Colin,

Attached is the draft agreement global agreement for the 3-year CNS. I apologize for the long delay in sending this draft. It took some time to confirm that the signatories had the authority to sign and make the warranties and representations on behalf of the respective affiliates. The attached Exhibits B and C list currently issued patents in which Leigh Rothschild is an inventor. These exhibits do not list patents in which Mr. Rothschild is not an inventor and pending applications, but the CNS would be applicable to those too.

Please let me know if you would like to discuss the draft.

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Wednesday, August 12, 2026 9:44 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

These look good. Appreciate your preparing and filing them.

Best,
Colin

**Colin Ward**
Vice President, Chief Litigation Counsel

+1 760.893.1840
6155 El Camino Real
Carlsbad, CA 92009

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Wednesday, August 12, 2026 at 17:37
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

**This Message Is From an External Sender**
This message came from outside your organization.

Colin,

Attached is a draft of an agreed motion for a second extension and proposed order. Please let me know if they are acceptable to file.

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Wednesday, August 12, 2026 10:00 AM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

David,
Thanks for the discussion yesterday. As discussed, we're looking forward to seeing a draft of the covenant not to sue from Patent Asset Management. I also appreciate Mr. Rothschild's assurance that he isn't looking to play games and assert against Viasat other patents he owns or controls outside of Patent Asset Management. Of course, and as we talked about, we'll need some sort of contractual language that gets us comfortable we are getting total peace from Mr. Rothschild. Looking forward to working with you to try to draft language that will get us both what we want in that regard.

In the meantime, I appreciate your receptiveness to a further extension of our responsive pleading deadline so we can try to complete a global peace deal. I know I told you on the phone yesterday that we could wait until the end of the week to formalize a deal for an additional 15 days. On second thought, however, I anticipate that we likely will need that extra time and so would be grateful if you'd please agree to the extension now (and file the necessary paperwork with the Court).

Thanks, and looking forward to speaking with you soon.

Best,
Colin

**Colin Ward**
Vice President, Chief Litigation Counsel

+1 760.893.1840
6155 El Camino Real
Carlsbad, CA 92009

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Monday, August 10, 2026 at 17:33
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

**This Message Is From an External Sender**
This message came from outside your organization.

I'll send an invite later today.

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Monday, August 10, 2026 6:42 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

Yes. I'm available tomorrow at 2pm PT. Do you want to send an invite?

CLW

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Sent:** Monday, 10 August 2026 16:25:41
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

Colin,

Are you available for a call on Tuesday at 2 pm PT/4 pm CT to continue settlement discussions?

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Monday, August 10, 2026 3:09 AM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

Thanks David—much appreciated.

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Friday, August 7, 2026 at 17:59
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

**This Message Is From an External Sender**
This message came from outside your organization.

Colin,

Attached are the filed motion for the extension and proposed order.

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Friday, August 7, 2026 12:48 AM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

Those look good; thanks for handling them.

CLW

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Sent:** Thursday, 06 August 2026 23:49:06
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

Colin,

We agreed to the 30-day extension to August 27. Attached are draft agreed motion and proposed order. Please let me know if they are okay to file.

I'll pass along your request for "peace forever" and will get back to you by early next week.

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Thursday, August 6, 2026 2:20 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

David:

Thanks for the call. Just so we're on the same page, I have our response date at August 27 following the 30-day extension. Can you please let me know if you disagree. Assuming you agree, I'd be grateful if you could please file something to that effect. I don't want to retain outside counsel in this matter unless I must.

Wehave also further considered your settlement offer and done some research, which shows that PAYG is a Leigh Rothschild company. As we discussed, our main sticking point with your current $90k demand is the possibility of additional suits following a settlement in this one. If we could settle with all the Leigh Rothschild companies, that would be far more attractive to us. Can you tell me what it would look like economically to achieve total peace forever, so we never have to worry about these companies?

Thanks very much for your help. Look forward to hearing from you.

Best,
Colin

**Colin Ward**
Vice President, Chief Litigation Counsel

+1 760.893.1840
6155 El Camino Real
Carlsbad, CA 92009

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Thursday, July 16, 2026 at 05:10
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

---

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

Colin,

9:30 am CT on 7/23 works for me.

Best of luck with your trial.

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Wednesday, July 15, 2026 9:02 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

David,
Thanks for the extension. Could we talk at 9 or 930 am Central time on the 23rd?

Best,
Colin

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Wednesday, July 15, 2026 at 11:30
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

---

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

Colin,

A 30-day extension is fine.

I'm unavailable Friday through next Wednesday. Would next Thursday (7/23) at 9:30 am PT/11:30 am CT? Otherwise, please suggests another time next Thursday (7/23) or Friday (7/24).

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Tuesday, July 14, 2026 10:47 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

David,
I'm currently in trial; could we speak on Friday instead? In the meantime, I'd appreciate a 30-day extension of our responsive pleading date to give us time to continue our discussions.

Thanks very much.

Best,
Colin

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Tuesday, July 14, 2026 at 13:58
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

---

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

Colin,

Are you available for a follow up call on Wednesday at 9:30 am PT/11:30 am CT?

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Monday, July 6, 2026 10:31 AM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

I can do a quick call then. I'll send an invite.

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Monday, July 6, 2026 at 08:01
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] PAYG LLC v. Viasat, Inc., 7:26-cv-00245 (WD Texas)

---

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

Colin,

Are you available on Wednesday at 1 pm PT/3 pm CT?

David
*Counsel for PAYG*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Friday, July 3, 2026 11:16 AM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: Althearidge LLC v. Viasat, Inc. (26-cv-154, WD Texas)

David,
I've received a copy of the complaint in *Pay as you Go v. Viasat*. Please let me know if you want to discuss this after the 4th of July holiday.

Best,
Colin

---

**From:** dbennett directionip.com <dbennett@directionip.com>
**Date:** Tuesday, April 21, 2026 at 14:28
**To:** Ward, Colin <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] Re: Althearidge LLC v. Viasat, Inc. (26-cv-154, WD Texas)

---

**This Message Is From an External Sender**
This message came from outside your organization.

Colin,

The case has been dismissed with prejudice. See attached.

David
*Counsel for Althearidge LLC*

---

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Monday, April 20, 2026 9:07 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Althearidge LLC v. Viasat, Inc. (26-cv-154, WD Texas)

Dear David,
I'm writing pursuant to the attached settlement agreement we reached in 2022. As you know, Viasat is licensed to both US Patent Nos. 7,154,961 and 7,567,622. Nevertheless, you recently filed suit against Viasat in the Western District of Texas on behalf of Althearidge LLC asserting those same patents (Case No. 26-cv-154).

Please confirm that you will dismiss this action promptly.

Thanks for your time and attention to this matter.

Best,
Colin

**Colin Ward**
Vice President, Chief Litigation Counsel

+1 760.893.1840
6155 El Camino Real
Carlsbad, CA 92009

---

**From:** "dbennett directionip.com" <dbennett@directionip.com>
**Date:** Friday, November 4, 2022 at 09:58
**To:** Colin Ward <Colin.Ward@viasat.com>
**Subject:** RE: [EXTERNAL] RE: Payment for Swirlate Settlement

Colin,

Attached is the filed Notice of Dismissal with Prejudice.

David
*Counsel for Swirlate IP LLC*

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Tuesday, November 1, 2022 10:04 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Re: [EXTERNAL] RE: Payment for Swirlate Settlement

Great—thanks for the follow up.

Best,
Colin

**From:** "dbennett directionip.com" <dbennett@directionip.com>
**Date:** Tuesday, November 1, 2022 at 7:59 PM
**To:** Colin Ward <Colin.Ward@viasat.com>
**Subject:** [EXTERNAL] RE: Payment for Swirlate Settlement

Colin,

The check has been received and will be deposited tomorrow.

David
*Counsel for Swirlate IP LLC*

**From:** Ward, Colin <Colin.Ward@viasat.com>
**Sent:** Tuesday, October 25, 2022 2:53 PM
**To:** dbennett directionip.com <dbennett@directionip.com>
**Subject:** Payment for Swirlate Settlement

David,

My Finance team informs me that in order to send funds by ACH, they may need your assistance validating your bank information etc. We are happy to take those steps. But they asked if you'd accept a check sent overnight. Is that acceptable to you as an alternative to ACH and, if so, can you confirm where we can send the check? If not, I'd suggest I copy you on an email with a member of our Corporate Treasury team to work through the ACH logistics as we are ready to make payment this week.

Thanks,
Colin

**Colin Ward**
Vice President, Chief Litigation Counsel

**O.** 760.893.1840
6155 El Camino Real
Carlsbad, CA 92009
www.viasat.com

**6 attachments**

**image001.png**
97K

**Outlook-A close up.png**
97K

**Outlook-cidimage00.png**
4K

**PAYG-PAM-LR-Viasat Global Deal - DRAFT-20260826.docx**
121K

**PAM_Affiliated_Inorganic_Exhibit B.docx**
37K

**Rothschild_CNS Patents_Exhibit C.docx**
35K

**SETTLEMENT, LICENSE, COVENANT NOT TO SUE, AND RELEASE AGREEMENT**

This Settlement, License, Covenant Not to Sue, and Release Agreement (the "Agreement") is made as of the Effective Date (defined below), by and between, on the one hand,

Patent Asset Management, LLC ("PAM"), a Florida limited liability company having its principal place of business at 1 East Broward Blvd., Suite 700, Fort Lauderdale, FL 33301;

Pay As You Go LLC ("PAYG"), a Texas limited liability company having its principal place of business at 1 East Broward Boulevard, Ste 700, Fort Lauderdale, FL 33301;

Leigh M. Rothschild, individually ("Rothschild"), 1574 NE Quayside Terrace, Miami, Florida 33138;

(PAM, PAYG, and Rothschild are each a "Grantor" and collectively "Grantors") and, on the other hand,

Viasat, Inc., a Delaware corporation with a regular and established place of business at 600 Congress Ave., 14th Floor, Austin, Texas 78701 ("Viasat").

Each Grantor and Viasat are individually referred to herein as a "Party," and collectively as the "Parties."

WHEREAS, PAYG asserts that it is the owner with all rights to enforce U.S. Patent No. 7,013,127 entitled "Systems and Methods for Employing 'Pay-As-You-Go' Telecommunication Services;"

WHEREAS, PAYG brought suit against Viasat in the United States District Court for the Western District of Texas, Case No. 7:26-cv-00245 (WDTX) (the "Litigation"), alleging infringement of one or more claims of U.S. Patent No. 7,013,127;

WHEREAS, among other issues in dispute, Viasat denies PAYG's allegations of infringement;

WHEREAS, PAYG and Viasat wish to minimize the time and expense of litigation, to fully and finally settle, resolve and release each other from all claims and disputes regarding the Litigation, and to prevent any future claims of patent infringement regarding the Licensed Patents;

WHEREAS, PAM has the right to grant rights, releases and covenants under the PAM CNS Patents (defined below) on behalf of itself and its Affiliates;

WHEREAS, PAM and Viasat desire to enter into a limited duration covenant not to sue and release agreement with respect to the PAM CNS Patents (defined below) on the terms and conditions agreed herein.

WHEREAS, Rothschild has the right to grant rights, releases and covenants under the Rothschild CNS Patents (defined below) on behalf of itself and its Affiliates; and

WHEREAS, Rothschild and Viasat desire to enter into a limited duration covenant not to sue and release agreement with respect to the Rothschild CNS Patents (defined below) on the terms and conditions agreed herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**Section 1: Definitions**

The terms set forth below shall have the following meanings in this Agreement.

1.1 "Affiliate" of a Party means any Person now or hereafter, directly or indirectly, Controlled by such Party.

1.2 "Control" (and correlatives thereof) of a Person means (a) the legal, beneficial, or equitable ownership, directly or indirectly of fifty percent (50%) or more of the securities (or other equity interests) of the Person that ordinarily have voting rights in the election of the directors or equivalent managers of the Person and the authority to cause the direction of management or policies of the Person, or (b) the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of the Person, whether through the legal, beneficial, or equitable ownership or control of voting securities of the Person, appointment of more than fifty percent (50%) of the board of directors of the Person, by contract, or otherwise.

1.3 "Effective Date" means the latest date upon which all Parties have signed this Agreement or identical counterparts thereof.

1.4 "Patents" means (a) any and all patent applications and issued patents; (b) all amendments, continuations, continuations-in-part, divisionals, extensions, non-provisionals, provisionals, reissues, reviews, renewals, substitutions, reexaminations, and foreign equivalents of any patents or patent applications set forth in (a) above; (c) all patents and patent applications claiming priority, in whole or in part, to or through, or sharing a common priority claim with, the patents described in any patents or patent applications set forth in (a)-(b) above; and (d) any foreign counterparts of any patents or patent applications set forth in (a)-(c) above.

1.5 "Licensed Patents" means (a) all Patents in or to which PAYG as of the Effective Date and at any time during the three (3) year period following the Effective Date has or will have an ownership interest, assignment, or assertion right, including without limitation the United States Patent Nos. 7,013,127, 8,068,810, 8,295,458, together with (b) all amendments, continuations, continuations-in-part, divisionals, extensions, non-provisionals, provisionals, reissues, reviews, renewals, substitutions, reexaminations, and foreign equivalents of any patents or patent applications set forth in (a) above; (c) all patents and patent applications claiming priority, in whole or in part, to or through, or sharing a common priority claim with, the patents described in any patents or patent applications set forth in (a)-(b) above; and (d) any foreign counterparts of any patents or patent applications set forth in (a)-(c) above. The "Licensed Patents" are inclusive of but not limited by the Patents listed in Exhibit A.

1.6 "PAM CNS Patents" means (a) all patents and pending patent applications other than Licensed Patents assigned to PAM or any Affiliate of PAM, as of the Effective Date; (b) all patents and patent applications filed and/or acquired by PAM (or any Affiliate of PAM); (c) all patents and patent applications owned and/or controlled by PAM (or any Affiliate of PAM), including but not limited to those patents and patent applications listed in Exhibit B; (d) all amendments, continuations, continuations-in-part, divisionals, extensions, non-provisionals, provisionals, reissues, reviews, renewals, substitutions, reexaminations, and foreign equivalents of any patents or patent applications set forth in (a)-(c) above; (e) all patents and patent applications claiming priority, in whole or in part, to or through, or sharing a common priority claim with, the patents described in any patents or patent applications set forth in (a)-(d) above; and (f) any foreign counterparts of any patents or patent applications set forth in (a)-(e) above. The "PAM CNS Patents" are inclusive of but not limited by the Patents listed in Exhibit B.

1.7 "PAM Covered Entity" means each Affiliate of PAM that owns or controls a PAM CNS Patent and for which PAM is duly authorized to act with respect to the licensing, enforcement, settlement, or covenanting of patent rights.

1.8 "Rothschild CNS Patents" means (a) all patents and pending patent applications assigned to Rothschild or any Affiliate of Rothschild, as of the Effective Date; (b) all patents and patent applications filed and/or acquired by Rothschild (or any Affiliate of Rothschild); (c) all patents and patent applications owned and/or controlled by Rothschild (or any Affiliate of Rothschild), including but not limited to those patents and patent applications listed in Exhibit C; (d) all amendments, continuations, continuations-in-part, divisionals, extensions, non-provisionals, provisionals, reissues, reviews, renewals, substitutions, reexaminations, and foreign equivalents of any patents or patent applications set forth in (a)-(c) above; (e) all patents and patent applications claiming priority, in whole or in part, to or through, or sharing a common priority claim with, the patents described in any patents or patent applications set forth in (a)-(d) above; and (f) any foreign counterparts of any patents or patent applications set forth in (a)-(e) above. The "Rothschild CNS Patents" are inclusive of but not limited by the Patents listed in Exhibit C.

1.9 "Rothschild Covered Entity" means each Person that owns or controls a Rothschild CNS Patent and for which Rothschild, as of the applicable date, (a) possesses the legal, beneficial, or equitable ownership, directly or indirectly of fifty percent (50%) or more of the securities (or other equity interests) of the Person that ordinarily have voting rights in the election of the directors or equivalent managers of the Person and the authority to cause the direction of management or policies of the Person, or (b) serves as a manager or other authorized representative with authority to bind such Person with respect to the licensing, enforcement, settlement, or covenanting of patent rights. Once a Person becomes a Rothschild Covered Entity during the applicable covenant period, a subsequent change in its ownership, management, or control shall not release that Person or its Rothschild CNS Patents from the covenants and releases applicable during that covenant period.

1.10 "Person" means an individual, trust, corporation, partnership, joint venture, limited liability company, association, unincorporated organization or other legal or governmental entity.

1.11 "Third Party" means a Person other than the Parties or an Affiliate of a Party.

1.12 "Viasat Products" means products, product lines, processes, methods, algorithms, services, devices, systems, components, hardware, software, and any combination of the foregoing, that are made, were made, produced, used, imported, exported, distributed, transferred, provided, sold, offered for sale, leased, offered for lease, developed, or otherwise disposed of in whole or in part by or on behalf of Viasat or its Affiliates. "Viasat Products" shall not refer to products, product lines, processes, methods, algorithms, services, devices, systems, components, hardware, software, and any combination of the foregoing of any Third Party ("Third Party products"), except as such Third Party products are made, were made, produced, used, imported, exported, distributed, transferred, provided, sold, offered for sale, leased, offered for lease, developed, or otherwise disposed of in whole or in part by Viasat or its Affiliates.

**Section 2: License, Covenants Not to Sue, and Release Between PAYG and Viasat**

2.1 PAYG License Grant**.** In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, PAYG hereby grants:

- to Viasat and its Affiliates and, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees;

- to the manufacturers, developers, partners, hosts, vendors, distributors, resellers, and retailers of Viasat and its Affiliates, and, solely in their role as such, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees, and all persons acting by, through, under, or in concert with any of foregoing, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- to the customers and end users of Viasat Products, solely to the extent of their use of Viasat Products;

a nonexclusive, nontransferable, perpetual, worldwide, fully paid-up, royalty-free, and irrevocable license under the Licensed Patents for past, present, and future actions, including to make, have made, use, sell, offer for sale, import, and export the Viasat Products. The license granted to Viasat and its Affiliates in this Section 2.1 does not confer upon Viasat or its Affiliates the right to grant or otherwise transfer any rights under the Licensed Patents to any other persons or entities for any purpose.

2.2 PAYG Covenant Not to Sue. In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, PAYG perpetually and irrevocably covenants not to sue, under the Licensed Patents:

- any Viasat and its Affiliates and, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees;

- any manufacturer, developer, partner, host, vendor, distributor, reseller, or retailer of Viasat and its Affiliates, and, solely in their role as such, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees, and all persons acting by, through, under, or in concert with any of foregoing, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- any customer or end user of Viasat Products, solely to the extent of their use of Viasat Products.

The covenants not to sue set forth in this Section 2.2 shall expressly exclude and shall not in any way apply to any other causes of action which do not relate to the Licensed Patents or Viasat Products that PAYG may now or in the future have against Viasat or its Affiliates, including without limitation breach of this Agreement.

2.3 Release by PAYG. In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, PAYG releases, acquits, and forever discharges:

- Viasat and its Affiliates;

- the officers, directors, members, stockholders, representatives, heirs, attorneys, employees, agents, and insurers of the Viasat and its Affiliates, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates;

- the manufacturers, distributors, developers, partners, hosts, vendors, resellers, and retailers of Viasat and its Affiliates, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- the customers and end users of Viasat Products, solely to the extent of their use of Viasat Products;

from any and all claims or liability for infringement or alleged infringement of the Licensed Patents in connection with the Viasat Products, whether known or unknown, contingent or fixed, suspected or unsuspected, occurring prior to the Effective Date. For the avoidance of doubt, the releases granted in this Section 2.3 do not apply to any claims arising out of the performance or breach of this Agreement.

2.4 Release of PAYG by Viasat**.** Viasat hereby releases, acquits, and forever discharges:

- PAYG;
- the officers, directors, members, attorneys, employees, agents, and insurers of PAYG, solely to the extent of their actions on behalf of PAYG;

from any and all claims in connection with the licensing and enforcement of the Licensed Patents, occurring prior to the Effective Date. For the avoidance of doubt, the releases granted in this Section 2.4 do not apply to any claims arising out of the performance or breach of this Agreement.

2.5 Contesting Validity. Viasat agrees that Viasat and its Affiliates shall not challenge, or assist others in challenging in any way, the validity and enforceability of any Licensed Patent, except that Viasat and its Affiliates shall have the right to challenge the validity and enforceability of any Licensed Patent in defense to a suit or assertion of a claim relating to any Licensed Patent that is brought against Viasat, its Affiliates, or Viasat Products.

2.6 Unknown Claims. PAYG, Viasat, and Viasat's Affiliates expressly acknowledge and agree that the licenses, covenants, and releases in this Section 2 fully and finally release and forever resolve the Litigation, including those claims by and between PAYG, Viasat, and Viasat's Affiliates arising under or related to the Licensed Patents that are unknown, unanticipated, or unsuspected, or that may hereafter arise as a result of the discovery of new and/or additional facts. PAYG, Viasat, and Viasat's Affiliates acknowledge and understand the significance and potential consequences of their release of unknown claims arising under or related to the Licensed Patents. PAYG, Viasat, and Viasat's Affiliates agree to waive and relinquish all rights and benefits each may have under Section 1542 of the Civil Code of the State of California, or any similar statute or law of any other jurisdiction. Section 1542 reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

2.7 Dismissal of Litigation. No later than three (3) business days after receipt of the payment by Grantor of the Settlement Payment in accordance with Section 5 below, PAYG, through its counsel, will dismiss, with prejudice, all claims and counterclaims made against the other respective party in the Litigation, with PAYG and Viasat each to bear its own costs, attorney's fees, and expenses. Neither PAYG nor Viasat shall take any action to oppose the Court's entry of dismissal as set forth above, nor to subsequently take any action either to vacate or modify the dismissal order, or to appeal or otherwise challenge any order or judgment in the Litigation. PAYG and Viasat shall take all reasonable steps to facilitate the execution and entry of the dismissal, within three (3) business days of the date on which the Settlement Payment is received by Grantors in accordance with Section 5 below.

**Section 3: Covenants Not to Sue and Releases Between PAM and Viasat**

3.1 PAM Limited Covenant Not to Sue. In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, for a period commencing on the Effective Date and ending on the third anniversary

of the Effective Date or the end of the respective covenant period (as described in Section 5.2), PAM, on behalf of itself and PAM Covered Entities, covenants not to sue, under the PAM CNS Patents:

- Viasat and its Affiliates and, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees;

- any manufacturer, developer, partner, host, vendor, distributor, reseller, or retailer of Viasat and its Affiliates, and, solely in their role as such, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees, and all persons acting by, through, under, or in concert with any of foregoing, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- any customer or end user of Viasat and its Affiliates, solely to the extent of their use of Viasat Products.

The covenants not to sue set forth in this Section 3.1 shall expressly exclude and shall not in any way apply to any other causes of action which do not relate to the PAM CNS Patents or Viasat Products that PAM or PAM Covered Entities may now or in the future have against Viasat or its Affiliates, including without limitation breach of this Agreement, and expressly exclude and shall not in any way apply to any causes of action brought after the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2).

For avoidance of doubt, after the period ending on the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), PAM and PAM Covered Entities may file a lawsuit against any entities subject to the covenant not to sue in this section 3.1 for any and all claims or liability for infringement or alleged infringement of the PAM CNS Patents or claims for damages resulting therefrom in connection with any Viasat Products (regardless of whether they were subject to the covenant not to sue in this Section 3.1) that arise on or after the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2).

3.2 Limited Release of Viasat by PAM. In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, PAM and PAM Covered Entities release, acquit, and forever discharge:

- Viasat and its Affiliates;

- the officers, directors, members, stockholders, representatives, heirs, attorneys, employees, agents, and insurers of the Viasat and its Affiliates, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates;

- the manufacturers, distributors, developers, partners, hosts, vendors, resellers, and retailers of Viasat and its Affiliates, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- the customers and end users of Viasat Products, solely to the extent of their use of Viasat Products;

from any and all claims or liability for infringement or alleged infringement of the PAM CNS Patents in connection with the Viasat Products, whether known or unknown, contingent or fixed, suspected or unsuspected, occurring prior to the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2). For the avoidance of doubt, the releases granted in this

Section 3.2 do not apply to (a) any claims or liability for infringement or alleged infringement of the PAM CNS Patents in connection with the Viasat Products or claims for damages resulting therefrom occurring on or after the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), and (b) any claims arising out of the performance or breach of this Agreement.

3.3 Release of PAM by Viasat**.** Viasat hereby releases, acquits, and forever discharges:

- PAM and PAM Covered Entities;
- the officers, directors, members, attorneys, employees, agents, and insurers of PAM and PAM Covered Entities, solely to the extent of their actions on behalf of PAM and PAM Covered Entities;

from any and all claims in connection with the licensing and enforcement of the PAM CNS Patents, occurring prior to the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2). For the avoidance of doubt, the releases granted in this Section 3.3 do not apply to any claims arising out of the performance or breach of this Agreement.

3.4 Contesting Validity. For a period commencing on the Effective Date and ending on the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), Viasat agrees that Viasat and its Affiliates shall not challenge, or assist others in challenging in any way, the validity and enforceability of any PAM CNS Patent, except that Viasat and its Affiliates shall have the right to challenge the validity and enforceability of any PAM CNS Patent in defense to a suit or assertion of a claim relating to any PAM CNS Patent that is brought against a Viasat, its Affiliates, or Viasat Products.

3.5 Unknown Claims. PAM, PAM Covered Entities, Viasat, and Viasat's Affiliates expressly acknowledge and agree that the covenants and releases in this Section 3 fully and finally releases and forever resolves any and all claims or liability for infringement or alleged infringement of the PAM CNS Patents in connection with the Viasat Products occurring prior to the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2). PAM, PAM Covered EntitiesViasat, and Viasat's Affiliates acknowledge and understand the significance and potential consequences of their limited release of unknown claims arising under or related to the PAM CNS Patents. PAM, PAM Covered Entities, Viasat, and Viasat's Affiliates agree to waive and relinquish all rights and benefits each may have under Section 1542 of the Civil Code of the State of California, or any similar statute or law of any other jurisdiction with respect to the releases in this Section 3. Section 1542 reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

## Section 4: Limited Duration Covenants Not to Sue and Limited Duration Releases Between Rothschild and Viasat

4.1 Rothschild Limited Covenant Not to Sue. In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, for a period commencing on the Effective Date and ending on the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), Rothschild, on behalf of itself and Rothschild Covered Entities, covenants not to sue, under the Rothschild CNS Patents:

- Viasat and its Affiliates and, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees;

- any manufacturer, developer, partner, host, vendor, distributor, reseller, or retailer of Viasat and its Affiliates, and, solely in their role as such, each of their officers, directors, stockholders, attorneys, representatives, heirs, agents, insurers, and employees, and all persons acting by, through, under, or in concert with any of foregoing, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- any customer or end user of Viasat and its Affiliates, solely to the extent of their use of Viasat Products.

The covenants not to sue set forth in this Section 4.1 shall expressly exclude and shall not in any way apply to any other causes of action which do not relate to the Rothschild CNS Patents or Viasat Products that Rothschild or Rothschild Covered Entities may now or in the future have against Viasat or its Affiliates, including without limitation breach of this Agreement, and expressly exclude and shall not in any way apply to any causes of action brought after the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2).

For avoidance of doubt, after the period ending on the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), Rothschild and Rothschild Covered Entities may file a lawsuit against any entities subject to the covenant not to sue in this section 4.1 for any and all claims or liability for infringement or alleged infringement of the Rothschild CNS Patents or claims for damages resulting therefrom in connection with any Viasat Products (regardless of whether they were subject to the covenant not to sue in this Section 4.1) that arise on or after the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2).

4.2 Limited Release of Viasat by Rothschild. In partial consideration of the payment by Viasat to Grantor pursuant to Section 5, Rothschild and Rothschild Covered Entities release, acquit, and forever discharge:

- Viasat and its Affiliates;

- the officers, directors, members, stockholders, representatives, heirs, attorneys, employees, agents, and insurers of the Viasat and its Affiliates, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates;

- the manufacturers, distributors, developers, partners, hosts, vendors, resellers, and retailers of Viasat and its Affiliates, solely to the extent of their actions on behalf of or for the benefit of Viasat and its Affiliates with respect to Viasat Products; and

- the customers and end users of Viasat Products, solely to the extent of their use of Viasat Products;

from any and all claims or liability for infringement or alleged infringement of the Rothschild CNS Patents in connection with the Viasat Products, whether known or unknown, contingent or fixed, suspected or unsuspected, occurring prior to the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2). For the avoidance of doubt, the releases granted in this Section 4.2 do not apply to (a) any claims or liability for infringement or alleged infringement of the Rothschild CNS Patents in connection with the Viasat Products or claims for damages resulting

therefrom occurring on or after the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), and (b) any claims arising out of the performance or breach of this Agreement.

4.3 Release of Rothschild by Viasat**.** Viasat hereby releases, acquits, and forever discharges:

- Rothschild and Rothschild Covered Entities;
- the officers, directors, members, attorneys, employees, agents, and insurers of Rothschild, solely to the extent of their actions on behalf of Rothschild and Rothschild Covered Entities;

from any and all claims in connection with the licensing and enforcement of the Rothschild CNS Patents, occurring prior to the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2). For the avoidance of doubt, the releases granted in this Section 4.3 do not apply to any claims arising out of the performance or breach of this Agreement.

4.4 Contesting Validity. For a period commencing on the Effective Date and ending on the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), Viasat agrees that Viasat and its Affiliates shall not challenge, or assist others in challenging in any way, the validity and enforceability of any Rothschild CNS Patent, except that Viasat and its Affiliates shall have the right to challenge the validity and enforceability of any Rothschild CNS Patent in defense to a suit or assertion of a claim relating to any Rothschild CNS Patent that is brought against a Viasat, its Affiliates, or Viasat Products.

4.5 Unknown Claims. Rothschild, Rothschild Covered Entities, Viasat, and Viasat's Affiliates expressly acknowledge and agree that the covenants and releases in this Section 4 fully and finally releases and forever resolves any and all claims or liability for infringement or alleged infringement of the Rothschild CNS Patents in connection with the Viasat Products occurring prior to the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2). Rothschild, Rothschild Covered Entities, Viasat, and Viasat's Affiliates acknowledge and understand the significance and potential consequences of their limited release of unknown claims arising under or related to the Rothschild CNS Patents. Rothschild, Rothschild Covered Entities, Viasat, and Viasat's Affiliates agree to waive and relinquish all rights and benefits each may have under Section 1542 of the Civil Code of the State of California, or any similar statute or law of any other jurisdiction with respect to the releases in this Section 4. Section 1542 reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

**Section 5: Consideration and Renewal**

5.1 Payment. In consideration of the licenses, releases, covenants and any other rights and benefits granted by Grantors, PAM Covered Entities, and Rothschild Covered Entities and the dismissal of the Litigation, Viasat agrees to pay a total of two hundred thousand U.S. dollars ($200,000) ("Settlement Payment") allocated as follows: (a) twenty-five thousand U.S. dollars ($25,000) to PAYG; (b) eighty-seven thousand five hundred U.S. dollars ($87,500) to Rothschild; and (c) eighty-seven thousand five hundred U.S. dollars ($87,500) to PAM. The Payment shall be made by wire transfer to the respective accounts shown below no later than ten (10) business days after the Effective Date.

**PAYG Account Information**

[*to be filled in*]

**Rothschild Account Information**

[*to be filled in*]

**PAM Account Information**

[*to be filled in*]

5.2 Renewal. Viasat, at its sole discretion and option, may elect to renew the covenant periods in Sections 3.1 and 4.1 for a second three (3) year period starting on the third anniversary of the Effective Date and ending on the sixth anniversary of the Effective Date. Viasat shall provide PAM and Rothschild written notice six (6) months prior to the third anniversary of the Effective Date that it may elect to renew the covenant period for an additional three (3) years. Within thirty (30) days of receipt of such notice, PAM and Rothschild shall provide Viasat a complete list of the Patents owned or controlled at any time during the then-current covenant period, by PAM and PAM Covered Entities, and Rothschild and Rothschild Covered Entities. Viasat may exercise its option to renew the covenant period by notifying PAM and Rothschild in writing of its intention to renew no later than two (2) months prior to the third anniversary of the Effective Date or as otherwise agreed by the Parties. The fee for the additional three (3) year renewal of the covenant period is $300,000 ("Renewal Payment"); allocated as follows: (a) one hundred fifty thousand U.S. dollars ($150,000) to PAM; and (b) one hundred fifty thousand U.S. dollars ($150,000) to Rothschild. The Renewal Payment must be made at least thirty (30) days prior to the third anniversary of the Effective Date.

5.3 Taxes. Each Party shall be responsible for any duties, taxes, and/or levies to which it is subject as a result of any payment hereunder. Viasat will not withhold any tax amounts from the Settlement Payment and will make the full amount of the Settlement Payment to the respective Grantor in accordance with the terms of this Section 5.

5.4 No Refund. In no event, including in the event of a finding of invalidity or unenforceability of one or more claims of any Licensed Patent, PAM CNS Patent, or Rothschild CNS Patent, shall Viasat be entitled to a refund or reimbursement of the Settlement Payment from any or all Grantors.

**Section 6: Termination**

6.1 Term. The term of this Agreement shall commence upon the Effective Date and shall continue until the expiration of the last-to expire Licensed Patent, the right to assert any claim of any Licensed Patent, or the third anniversary of the Effective Date or the end of the respective covenant period (as described in Section 5.2), whichever is later, unless earlier terminated as set forth in Section 6.2.

6.2 Termination for Breach of Payment Terms. Grantors may terminate this Agreement upon ten (10) days written notice to Viasat upon the breach by Viasat of any of the payment terms of this Agreement contained in Section 5 above, provided that Viasat has not cured the breach within such ten (10) day period. For the avoidance of doubt, if Viasat decides not to exercise the renewal option in Section 5.2, Viasat is not required to make the payment in Section 5.2 and therefore not making the payment in Section 5.2 is not a breach of the Agreement; however if Viasat decides to exercise the renewal option in Section 5.2 but then fails to make the required payment by the time required in Section 5.2, such failure to make the payment is a breach of a payment term of this Agreement.

6.3 Safe Harbor. Except for the breach of the payment terms as described in Section 5.1 and 5.2, in the case of any other breach of this Agreement by either Party, the allegedly breaching Party must be provided written notice of the alleged breach. Such an alleged breach shall not be considered a breach and there shall be no damages for the alleged breach of this Agreement if the allegedly breaching Party cures it within 30 days of such written notice.

6.4 Agreement Obligations Not Released. Notwithstanding anything to the contrary herein, nothing herein releases any Party from its respective obligations under this Agreement or prevents any Party from enforcing the terms and conditions of this Agreement against the other.

6.5 Reserved Rights. Any and all rights not explicitly granted to Viasat and its Affiliates in Sections 2.1, 2.2, 3.1, and 4.1 above are expressly reserved by the respective Grantor, PAM Covered Entities, and Rothschild Covered Entities. No license or covenants as to any Patents is granted by a Grantor, PAM Covered Entities, or Rothschild Covered Entities to any person, either by implication, estoppel, or otherwise, other than the license and covenants expressly set forth in Sections 2.1, 2.2, 3.1, and 4.1 above.

**Section 7: Assignment, Change of Control, and Notice**

7.1 Binding Effect. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by the Parties and their permitted successors and assigns.

7.2 Assignment and Change of Control. Viasat may not assign, delegate, sell, transfer, sublicense, or otherwise dispose of any or all of its rights or obligations under this Agreement to any other person, business, or entity, except pursuant to a merger, a sale of all or substantially all of Viasat's business assets, or a corporate reorganization. In the event that Viasat is part of a merger or is sold or acquired by another entity, the license rights, covenants, and other rights granted under this Agreement shall extend only to the business of Viasat at the time of the merger, sale, or acquisition, and natural evolutions thereof, and shall not extend to any other operations of any entity that is merged with Viasat or that purchases or acquires Viasat, even if the operations are of the same type as Viasat. To the extent of a permitted transfer allows under this Section 7.2, neither Viasat nor any of its Affiliates shall assign or otherwise transfer any right hereunder to any other party unless (i) such sale or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such other party executes an agreement agreeing to be bound by all the terms and conditions of this Agreement with respect to the rights being transferred or assigned. In the event that a Person is not a Viasat Affiliate as of the Effective Date of this Agreement, but later becomes a Viasat Affiliate through an acquisition by Viasat (an "Acquired Affiliate"), such Acquired Affiliate shall be deemed to be a Viasat Affiliate for the purposes of this Agreement upon completion of such acquisition, but nothing herein shall limit or impair PAM's, PAM Covered Entities', Rothschild's, or Rothschild Covered Entities' rights to prosecute or maintain any claim against any Acquired Affiliate with respect to activities, events or transactions occurring prior to the time when such Person became an Acquired Affiliate. For sake of clarity, Viasat or its Affiliates may assign their rights under this Agreement in compliance with this Section 7.2 while they continue to retain its rights under this Agreement for their remaining products and businesses.

7.3 Assignment by Grantor. Any assignment or transfer of this Agreement or ownership or title to any Licensed Patents, PAM CNS Patents, or Rothschild CNS Patents, or the grant of an exclusive license or other right to enforce any of the Licensed Patents, PAM CNS Patents, or Rothschild CNS Patents by the respective Grantor, PAM Covered Entity, and Rothschild Covered Entity shall be made expressly subject to the assignee's prior acceptance of all of the terms and conditions of this Agreement. No Rothschild Covered Entity may transfer ownership of, or any exclusive enforcement right concerning, a Rothschild CNS Patent during the applicable covenant period unless the transfer is expressly made subject to this Agreement and the transferee agrees in writing to be bound by the applicable covenants, releases, and restrictions for the remainder of that covenant period.

7.4 Unpermitted Assignment Void. Any attempt to transfer, license, assign, or grant in contravention of Section 7 shall be null and void.

7.5 Notice. Any notice required or permitted by this Agreement shall be in writing and shall be sent by (a) a reliable overnight courier service, return receipt requested; (b) by prepaid registered or certified mail, return receipt requested, or (c) by email to the other Party at the address below or to such other address for which such Party shall give notice hereunder. Such notice shall be deemed to have been given one (1) day after the date of sending if by overnight courier service, or five (5) days after the date of sending by registered or certified mail, or upon confirmed receipt if delivered by email, except that notice of change of address shall be effective only upon receipt.

If to PAYG:

Pay As You Go, LLC
1 East Broward Boulevard Ste 700
Fort Lauderdale, FL 33301

With a copy to:

Direction IP Law
Attn: David R. Bennett, Esq.
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

If to PAM:

Patent Asset Management LLC
1 East Broward Boulevard Ste 700
Fort Lauderdale, FL 33301

With a copy to:

Direction IP Law
Attn: David R. Bennett, Esq.
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

If to Rothschild:

Leigh M. Rothschild
1574 NE Quayside Terrace
Miami, Florida 33138
leigh@patentmgmt.com

With a copy to:

Direction IP Law

Attn: David R. Bennett, Esq.
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

To Viasat:

______________________________
______________________________
______________________________

7.6 A Party may change the above addresses for notices relating to this Agreement in a written notice to the other Party complying as to delivery with the terms of Section 7.5. All such notices, requests, demands and other communications shall be effective on receipt by the intended recipient.

**Section 8: Representations, Warranties, and Confidentiality**

8.1 PAYG Representation. PAYG represents and warrants as of the Effective Date that: (i) PAYG is the assignee of all right, title and interest in and to the Licensed Patents, and has the right to grant releases, licenses and covenants with respect to the Licensed Patents of the full scope set forth herein without payment of any consideration to any Third Party; (ii) it has not assigned or otherwise transferred to any other Person any rights to the Licensed Patents that would prevent PAYG from entering into this Agreement; and (iii) the person executing this Agreement on behalf of PAYG has the full right and authority to enter into this Agreement on PAYG's behalf.

8.2 PAM Representation. PAM represents and warrants as of the Effective Date that: (i) PAM and PAM Covered Entities owns all right, title and interest in and to their respective PAM CNS Patents, and has the right to grant releases and covenants with respect to the PAM CNS Patents of the full scope set forth herein without payment of any consideration to any Third Party; (ii) they have not assigned or otherwise transferred to any other Person any rights to the PAM CNS Patents that would prevent PAM and PAM Covered Entities from entering into this Agreement; (iii) PAM executes this Agreement on behalf of itself and as the duly authorized representative of each PAM Covered Entity; (iv) the person executing this Agreement on behalf of PAM has the full right and authority to enter into this Agreement on PAM's behalf; and (v) each PAM Covered Entity shall be bound by the covenants, releases, representations, warranties, assignment restrictions, and other obligations applicable to PAM under this Agreement solely with respect to the PAM CNS Patents it owns or controls. PAM represents and warrants that it has obtained all approvals and authorizations necessary to bind each PAM Covered Entity.

8.3 Rothschild Representation. Rothschild represents and warrants as of the Effective Date that: (i) Rothschild and Rothschild Covered Entities have the right to grant releases and covenants with respect to their respective Rothschild CNS Patents of the full scope set forth herein without payment of any consideration to any Third Party; (ii) they have not assigned or otherwise transferred to any other Person any rights to the Rothschild CNS Patents that would prevent Rothschild and Rothschild Covered Entities from entering into this Agreement; (iii) for purposes of this Agreement, Rothschild executes this Agreement (a) individually with respect to any Rothschild CNS Patents owned by him personally and (b) as the duly authorized representative of each Rothschild Covered Entity; (iv) the person executing this Agreement on behalf of Rothschild has the full right and authority to enter into this Agreement on Rothschild's behalf; and (v) each Rothschild Covered Entity shall be bound by the covenants, releases, representations, warranties, assignment restrictions, and other obligations applicable to Rothschild under this Agreement solely with respect to the Rothschild CNS Patents it owns or controls. Rothschild represents and warrants that he has full authority to execute this Agreement on behalf of each Rothschild

Covered Entity and to bind each such entity to the covenants and releases set forth herein. Any approvals or consents required under the applicable organizational documents have been obtained before execution of this Agreement.

8.4 Viasat Representation. Viasat represents and warrants as of the Effective Date that: (i) it has the rights to grant the covenants and releases of the full scope set forth here; and (ii) the person executing this Agreement on behalf of Viasat and its Affiliates has the full right and authority to enter into this Agreement on behalf of Viasat and its Affiliates.

8.5 Nothing contained in this Agreement shall be construed as:

(a) a warranty or representation by either Party that any products or services by the other Party does not or will not in the future infringe of any claim of any other patents, trademarks, copyright or other proprietary right;

(b) an agreement by either Party to bring or prosecute actions or suits against Third Parties for infringement, or conferring any right to the other Party to bring or prosecute actions or suits against Third Parties for infringement or to defend any action brought by a Third Party that challenges or concerns the validity of any of Patent;

(c) conferring any right to the other Party to use in advertising, publicity, or otherwise, any trademark, trade name or names of either Party, or any contraction, abbreviation or simulation thereof without the prior written consent of the other Party;

(d) conferring by implication, estoppel or otherwise, upon either Party, any right (including a license) under other patents except for the rights expressly granted hereunder; or

(e) an obligation to furnish any technical information or know-how.

8.6 No Other Representations and Warranties. The Licensed Patents, PAM CNS Patents, and Rothschild CNS Patents are licensed, convenanted, and/or released "as is," without warranties of any kind, and the respective Grantor, PAM Covered Entities, and Rothschild Covered Entities MAKE NO REPRESENTATIONS AND WARRANTIES OF ANY KIND, except as otherwise expressly agreed herein. Except as otherwise set forth in 8.1 through 8.3 above, the respective Grantor, PAM Covered Entities, and Rothschild Covered Entities make no representations or warranties of any kind including without limitation, express, implied, statutory, merchantability, fitness for a particular purpose, patent enforceability, or patent validity representations and/or warranties. In addition, the respective Grantor, PAM Covered Entities, and Rothschild Covered Entities make no representation that the use of the Licensed Patents, PAM CNS Patents, and Rothschild CNS Patents in connection with the manufacture, use, sale, offer for sale, or import of Viasat Products will not infringe, directly, contributorily, or by inducement, any patent, copyright, trademark or other proprietary right of any third party.

8.7 Limit on Damages. No Party shall be liable for any special, indirect, incidental or consequential damages, even if informed of the possibility thereof in advance. These limitations apply to all causes of action in the aggregate, including without limitation, breach of contract, breach of warranty, negligence, strict liability, misrepresentation and other torts, loss of profit, loss of business, loss of savings or other loss. In no event shall any Party or its affiliates, successors, or assigns be liable for payment of damages for any amount that exceeds the aggregate total amount collectively paid to Grantors under the terms of this Agreement. Each Party, their respective Affiliates, and all other parties receiving a license under this Agreement, expressly consent to this limitation of liability for all actions and inactions with respect to this Agreement.

8.8 Confidentiality. Except as expressly provided elsewhere in this Agreement, each Party will maintain the terms of this Agreement in confidence and shall not publicize or disclose those terms in any

manner whatsoever. Notwithstanding the foregoing, this Agreement may be confidentially disclosed as follows:

(a) with the prior written consent of the other Party;

(b) to any governmental body having jurisdiction and specifically requiring such disclosure;

(c) in response to a valid subpoena subject to Section 8.9 below or as otherwise may be required by law; provided however, that the Party producing a copy of this Agreement shall exercise its best efforts to produce it subject to a protective order under an "Outside Attorneys Eyes Only" or higher confidentiality designation;

(d) for the purposes of disclosure in connection with the Securities and Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, and any other reports filed with the Securities and Exchange Commission, or any other filings, reports or disclosures that may be required under applicable laws or regulations;

(e) to a Party's accountants, legal counsel, tax advisors and other financial and legal advisors, subject to obligations of confidentiality and/or privilege at least as stringent as those contained herein;

(f) to Viasat's customers and their legal advisors solely to the extent necessary to assure them that, to the extent provided in this Agreement, their activities with respect to any of the Viasat Products will not expose them to the threat of litigation or any costs and fees arising therefrom provided such disclosure shall not include disclosure regarding the consideration in Section 5;

(g) Grantor, PAM Covered Entities, and Rothschild Covered Entities may disclose the terms and existence of this Agreement to potential assignees, successors, or purchasers of the Licensed Patents, PAM CNS Patents, or Rothschild CNS Patents so long as such party is bound to confidentiality obligations that are at least as restrictive as the terms of this confidentiality provision in this Agreement; or

(h) with obligations of confidentiality at least as stringent as those contained herein, to a counterparty in connection with a proposed merger, acquisition, financing or similar transaction.

The failure of any Party to enforce at any time any of the provisions governing the confidentiality of the existence and terms of this Agreement or to require at any time performance by any of the Parties of any such provisions shall in no way be construed as a waiver of such provision or relinquishment of the right thereafter to enforce such provision.

8.9 Subpoena. If a Party receives a subpoena or document request seeking information regarding the terms of this Agreement, it shall notify the other Party in writing as soon as practicable, and refrain from disclosing any information regarding the terms of this Agreement for 14 days after providing such notice, in order to allow the other Party to file a motion to quash or motion for protective order before the court or governmental body with jurisdiction over the subpoena. *See*, *e.g.*, Fed. R. Civ. P. 45(d)(3). If the other Party does not file such a motion, the Party receiving the subpoena or document request seeking information regarding the terms of this Agreement may disclose it notwithstanding any other provision of this Section 8. If the other Party does file such a motion, the Party receiving the subpoena or document request seeking information regarding the terms of this Agreement may not disclose it until resolution of the motion.

8.10 Publicity. No Party will issue a press release or any other announcement regarding this Agreement unless all Parties provide prior consent in writing. The Parties shall direct their representatives not to make any disclosures of the terms of this Agreement. Notwithstanding Section 8.8 and this section 8.10, upon inquiry, PAYG and Viasat may state that the Litigation has been settled and dismissed subject to an agreement between the Parties and that the Viasat Products are covered by a license under the Licensed Patents.

**Section 9: General Terms**

9.1 Non-Agency. Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee, or joint venture relationship between PAYG, PAM, PAM Covered Entities, Rothschild, and/or Rothschild Covered Entities on one side and Viasat on the other side. Neither PAYG, PAM, PAM Covered Entities, Rothschild, nor Rothschild Covered Entities on one side, nor Viasat on the other side shall incur any debts or make any commitments for the other.

9.2 No rights or covenants are granted under any patents except as expressly provided herein, whether by implication, estoppel or otherwise. All rights to the Licensed Patents, PAM CNS Patents, and Rothschild CNS Patents not expressly granted in this Agreement are reserved. There are no implied licenses granted to any Third Parties as a result of this Agreement. No right to grant covenants, rights, or sublicenses is granted under any of the rights set forth in this Agreement.

9.3 The Parties agree that they shall each bear their own costs, expenses, and attorneys' fees relating to the Litigation and to the negotiation of this Agreement.

9.4 Viasat and its Affiliates agree to mark their products as required pursuant to 35 U.S.C. §287. Any determination as to whether marking of Viasat's and its Affiliates' products is required under 35 U.S.C. § 287 shall be in Viasat's and its Affiliates' sole discretion and shall not be challenged by PAYG, PAM, PAM Covered Entities, Rothschild, or Rothschild Covered Entities. The Parties agree that in the event it is established that Viasat or its Affiliates have products that should be marked under 35 U.S.C. §287, they will cooperate to effecting appropriate marking. Viasat asserts that it has not infringed any claim of the Licensed Patents, and that it is not currently infringing any claim of the Licensed Patents, and that the Licensed Patents are invalid. Viasat further asserts that it could not make, have made, sell, offer for sale, or import into the United States any product that could infringe any claim of the Licensed Patents. Viasat is also not aware of any infringement of any claim of a PAM CNS Patent or Rothschild CNS Patent. Therefore, from the Effective Date forward, Viasat contends it will have no products that must be marked under 35 U.S.C. §287.

9.5 The Parties agree that this Agreement is not representation that the foregoing consideration represents a reasonable royalty for any infringement of any claim in any Licensed Patent, PAM CNS Patent, or Rothschild CNS Patent.

9.6 Nothing in this Agreement, express or implied, is intended to confer upon any person or entity other than the Parties hereto any legal or equitable right, benefit, claim, or remedy of any nature whatsoever, including as a third-party beneficiary. No third party shall have any right to enforce any term of this Agreement or to assert any claim arising out of or relating to this Agreement; however, this Section 9.6 shall not prevent a third party from pleading this Agreement as a defense in an action initiated against a third party.

9.7 This Agreement embodies the entire understanding of the Parties and supersedes all previous communications, representations or understandings, either oral or written, between the Parties relating to its subject matter.

9.8 Governing Law and Consent to Jurisdiction. This Agreement will be interpreted, construed, and enforced in all respects in accordance with the laws of the State of Texas, without reference to its choice of law principles to the contrary and excluding any conflict of law provisions. The Parties irrevocably consent to the jurisdiction and venue of the courts sitting in Western District of Texas in connection with any action, suit, proceeding, or claim arising under or by reason of this Agreement.

9.9 Severability. If any provision of this Agreement is held to be illegal or unenforceable, such provision shall be limited or eliminated to the minimum extent necessary so that the remainder of this Agreement will continue in full force and effect and be enforceable. The Parties agree to negotiate in good faith to enforce a substitute provision for any invalid or unenforceable provision that most nearly achieves the intent of such provision.

9.10 Nothing in the Agreement is to be construed as requiring the commission of any act contrary to law. Wherever there is any conflict between any provision of the Agreement and any statute, law or ordinance, or a treaty and its valid regulations, the statute, law, ordinance, or treaty and its valid regulations shall prevail. In such event the provisions of the Agreement shall be curtailed and limited only to the extent necessary to bring them within the legal requirements, and such provisions, so curtailed and limited, together with all other provisions of the Agreement shall continue in full force and effect.

9.11 Any amendment or modification to this Agreement must be in writing and signed by all Parties.

9.12 No Waiver. The failure of a Party to enforce any provision of this Agreement shall not prevent the subsequent enforcement of such provision. No waiver of any provision of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver unless expressly stated in writing by the party making the waiver. No waiver of any provision shall be binding in any event unless executed in writing by the party making the waiver.

9.13 Interpretation. The language of this Agreement has been approved by counsel for each Party, and neither Party nor their counsel shall be deemed to be the draftsman of this Agreement. Thus, any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not be applied in the interpretation of this Agreement. The words “include” and “including” and variations thereof, will not be deemed to be terms of limitation in this Agreement, but rather will be deemed to be followed by the words “without limitation.” The headings in this Agreement are for convenience and organization only, and not intended to constitute the substance of this Agreement.

9.14 Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument. The Parties agree that facsimile, scanned, or electronic copies of signatures shall be deemed originals for all purposes hereof and that either Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed with intent to be bound as of the Effective Date.

**Pay As You Go, LLC**

By: ______________________________
Print Name: ______________________
Title: ___________________________
Date: ___________________________

**Patent Asset Management, LLC** (on behalf of PAM and as a duly authorized representative of each PAM Covered Entity)

By: ______________________________
Print Name: ______________________
Title: ___________________________
Date: ___________________________

**Leigh M. Rothschild** (individually and as duly authorized representative of each Rothschild Covered Entity)

By: ______________________________
Print Name: ______________________
Title: ___________________________
Date: ___________________________

**Viasat, Inc.**

By: ______________________________
Print Name: ______________________
Title: ___________________________
Date: ___________________________

[Signature Page to the Non-Exclusive Patent License and Settlement Agreement]

**EXHIBIT A: LICENSED PATENT LIST**

| U.S. Patent or Application Number | Earliest Effective Filing Date | Title of Patent and First Named Inventor | Issue Date | Patent Term Expiration |
|---|---|---|---|---|
| US Patent No. 7,013,127 | 01/07/2003 | Systems and methods for employing "pay-as-you-go" telecommunication services; Harold S. Wills (US) | 03/14/2006 | Term Expires: 01/07/2023 plus 238 days |
| US Patent No. 8,068,810 | 01/07/2003 | Systems and methods for monitoring "pay-as-you-go" telecommunication services; Harold S. Wills (US) | 11/29/2011 | Term Expires: 01/07/2023 |
| US Patent No. 8,295,458 | 01/07/2003 | Systems and methods for monitoring "pay-as-you-go" telecommunication services; Harold S. Wills (US) | 10/23/2012 | Term Expires: 01/07/2023 |

**EXHIBIT B: PAM CNS PATENT LIST**

**[to be inserted]**

## EXHIBIT C: ROTHSCHILD CNS PATENT LIST

**[to be inserted]**

# PATENT ASSET MANAGEMENT LLC-AFFILIATED PATENT ASSET LIST

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 7,456,872<br>Application No. 11/051,069 | November 29, 2004 | Device and method for embedding and retrieving information in digital images | Leigh M. Rothschild |
| U.S. Patent No. 7,475,092<br>Application No. 11/202,688 | November 29, 2004 | System and method for embedding symbology in digital images and using the symbology to organize and control the digital images | Leigh M. Rothschild |
| U.S. Patent No. 8,031,084<br>Application No. 12/907,702 | September 22, 2008 | Method and system for infraction detection based on vehicle traffic flow data | Leigh M. Rothschild |
| U.S. Patent No. 8,151,180<br>Application No. 12/387,245 | May 2, 2008 | System and method of embedding symbology in alphabetic letters and then linking the letters to a site or sites on the global computer network | Leigh M. Rothschild |
| U.S. Patent No. 8,155,887<br>Application No. 12/191,759 | August 14, 2008 | Computer visualized drug interaction information retrieval | Leigh M. Rothschild |
| U.S. Patent No. 8,200,564<br>Application No. 12/956,015 | April 5, 2005 | Method and system for creating an equity exchange fund for public and private entities | Leigh M. Rothschild |
| U.S. Patent No. 8,204,437<br>Application No. 12/228,256 | August 8, 2008 | Wireless image distribution system and method | Leigh M. Rothschild |
| U.S. Patent No. 8,307,089<br>Application No. 13/300,798 | August 29, 2011 | System and method for storing broadcast content in a cloud-based computing environment | Leigh M. Rothschild |
| U.S. Patent No. 8,346,920<br>Application No. 12/837,058 | July 15, 2010 | Managing network resource requests | Leigh M. Rothschild |
| U.S. Patent No. 8,370,141<br>Application No. 11/367,986 | March 3, 2006 | Device, system and method for enabling speech recognition on a portable data device | Leigh M. Rothschild |
| U.S. Patent No. 8,374,919<br>Application No. 13/537,017 | September 4, 2007 | Method and system for conducting an auction over a network | Leigh M. Rothschild |
| U.S. Patent No. 8,380,581<br>Application No. 13/584,077 | September 4, 2007 | Method and system for conducting an auction over a network | Leigh M. Rothschild |
| U.S. Patent No. 8,417,377<br>Application No. 12/854,451 | June 20, 2006 | System and method for creating a personalized consumer product | Leigh M. Rothschild |
| U.S. Patent No. 8,424,752<br>Application No. 13/170,810 | September 15, 2010 | System and method for presenting information about an object on a portable electronic device | Leigh M. Rothschild |
| U.S. Patent No. 8,437,797<br>Application No. 13/471,140 | August 8, 2008 | Wireless image distribution system and method | Leigh M. Rothschild |
| U.S. Patent No. 8,469,270<br>Application No. 13/405,246 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 8,594,341<br>Application No. 10/967,404 | October 18, 2004 | System and method for selectively switching between a plurality of audio channels | Leigh M. Rothschild |
| U.S. Patent No. 8,594,722<br>Application No. 13/850,651 | August 8, 2008 | Wireless image distribution system and method | Leigh M. Rothschild |
| U.S. Patent No. 8,600,337<br>Application No. 12/082,986 | April 16, 2008 | Communicating a security alert | Leigh M. Rothschild |
| U.S. Patent No. 8,606,503<br>Application No. 12/882,754 | April 28, 2006 | Device, system and method for remotely entering, storing and sharing addresses for a positional information device | Leigh M. Rothschild |
| U.S. Patent No. 8,610,372<br>Application No. 13/337,562 | December 27, 2011 | Battery-conserving flashlight and method thereof | Leigh M. Rothschild |
| U.S. Patent No. 8,635,298<br>Application No. 13/472,479 | February 5, 2007 | System and method for linking terrestrial mail over a network | Leigh M. Rothschild |
| U.S. Patent No. 8,651,369<br>Application No. 13/868,071 | September 15, 2010 | System and method for presenting information about an object on a portable device | Leigh M. Rothschild |
| U.S. Patent No. 8,671,195<br>Application No. 11/999,570 | December 7, 2007 | Digital media communication protocol | Leigh M. Rothschild |
| U.S. Patent No. 8,798,544<br>Application No. 13/804,509 | August 8, 2008 | Wireless communications using coinciding multiple pairing criteria | Leigh M. Rothschild |
| U.S. Patent No. 8,798,640<br>Application No. 12/909,290 | May 1, 2009 | Location based data acquisition | Leigh M. Rothschild |
| U.S. Patent No. 8,799,263<br>Application No. 13/368,326 | September 4, 2011 | Systems, devices, and methods for providing multidimensional search results | Leigh M. Rothschild |
| U.S. Patent No. 8,832,542<br>Application No. 13/313,099 | May 2, 2008 | System and method of embedding symbology in alphabetic letters and then linking the letters to a site or sites on the global computer network | Leigh M. Rothschild |
| U.S. Patent No. 8,856,221<br>Application No. 13/652,034 | August 29, 2011 | System and method for storing broadcast content in a cloud-based computing environment | Leigh M. Rothschild |
| U.S. Patent No. 8,862,058<br>Application No. 13/329,463 | December 19, 2011 | Systems and methods for reducing electromagnetic radiation emitted from a wireless headset | Leigh M. Rothschild |
| U.S. Patent No. 8,936,190<br>Application No. 14/181,945 | September 15, 2010 | System and method for presenting information about an object on a portable electronic device | Leigh M. Rothschild |
| U.S. Patent No. 9,053,498<br>Application No. 14/294,800 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |
| U.S. Patent No. 9,054,860<br>Application No. 12/006,457 | January 2, 2008 | Digital verified identification system and method | Leigh M. Rothschild |
| U.S. Patent No. 9,239,158<br>Application No. 14/106,848 | December 27, 2011 | Battery-conserving flashlight and method thereof | Leigh M. Rothschild |

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 9,261,365<br>Application No. 14/022,193 | April 28, 2006 | Device, system and method for remotely entering, storing and sharing addresses for a positional information device | Leigh M. Rothschild |
| U.S. Patent No. 9,300,723<br>Application No. 13/494,097 | December 7, 2007 | Enabling social interactive wireless communications | Leigh M. Rothschild |
| U.S. Patent No. 9,378,398<br>Application No. 14/599,704 | September 15, 2010 | System and method for presenting information about an object on a portable electronic device | Leigh M. Rothschild |
| U.S. Patent No. 9,380,439<br>Application No. 14/070,577 | April 16, 2008 | Device, system and method for confidentially communicating a security alert | Leigh M. Rothschild |
| U.S. Patent No. 9,448,603<br>Application No. 13/472,447 | September 3, 2011 | Transferring power to a mobile device | Leigh M. Rothschild |
| U.S. Patent No. 9,466,078<br>Application No. 14/731,817 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |
| U.S. Patent No. 9,547,667<br>Application No. 12/860,404 | August 20, 2010 | Image annotation for image auxiliary information storage and retrieval | Leigh M. Rothschild |
| U.S. Patent No. 9,552,724<br>Application No. 13/683,264 | September 22, 2008 | Traffic citation delivery based on type of traffic infraction | Leigh M. Rothschild |
| U.S. Patent No. 9,563,600<br>Application No. 13/592,378 | August 23, 2012 | System and method for monitoring and dispensing doses of medication | Leigh M. Rothschild |
| U.S. Patent No. 9,674,377<br>Application No. 14/551,762 | August 8, 2008 | Wireless image distribution system and method | Leigh M. Rothschild |
| U.S. Patent No. 9,683,729<br>Application No. 14/996,513 | December 27, 2011 | Battery-conserving flashlight and method thereof | Leigh M. Rothschild |
| U.S. Patent No. 9,740,784<br>Application No. 15/409,309 | September 15, 2010 | System and method for presenting information about an object on a portable electronic device | Leigh M. Rothschild |
| U.S. Patent No. 9,747,261<br>Application No. 14/480,609 | May 2, 2008 | System and method of embedding symbology in alphabetic letters and then linking the letters to a site or sites on the global computer network | Leigh M. Rothschild |
| U.S. Patent No. 9,830,389<br>Application No. 14/450,653 | September 4, 2011 | Systems, devices, and methods for providing multidimensional search results | Leigh M. Rothschild |
| U.S. Patent No. 9,871,415<br>Application No. 15/242,245 | September 3, 2011 | Transferring power to a mobile device | Leigh M. Rothschild |
| U.S. Patent No. 9,917,834<br>Application No. 14/733,436 | January 2, 2008 | Digital verified identification system and method | Leigh M. Rothschild |
| U.S. Patent No. 9,934,528<br>Application No. 15/267,594 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |
| U.S. Patent No. 9,936,455<br>Application No. 14/512,870 | December 19, 2011 | Systems and methods for reducing electromagnetic radiation emitted from a wireless headset | Leigh M. Rothschild |

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 9,953,494<br>Application No. 13/248,727 | February 25, 2011 | Device, system and method for mobile devices to communicate through skin response | Leigh M. Rothschild |
| U.S. Patent No. 10,454,305<br>Application No. 15/841,791 | September 3, 2011 | Transferring power to a mobile device | Leigh M. Rothschild |
| U.S. Patent No. 10,511,907<br>Application No. 16/057,651 | August 7, 2017 | System and method for adjusting audio parameters for a user | Leigh M. Rothschild |
| U.S. Patent No. 10,817,574<br>Application No. 15/492,515 | September 15, 2010 | System and method for discovering objects in an environment | Leigh M. Rothschild |
| U.S. Patent No. 10,909,190<br>Application No. 15/810,469 | September 4, 2011 | Systems, devices, and methods for providing multidimensional search results | Leigh M. Rothschild |
| U.S. Patent No. 11,205,503<br>Application No. 15/803,919 | August 14, 2008 | Drug substance interaction and generic substance information retrieval | Leigh M. Rothschild |
| U.S. Patent No. 11,443,539<br>Application No. 16/780,290 | February 3, 2020 | System and method for identifying and tagging individuals present in an image | Leigh M. Rothschild |
| U.S. Patent No. 12,325,418<br>Application No. 19/004,061 | June 12, 2023 | Tracking for traffic lights | Leigh M. Rothschild |

## PATENTS ASSIGNED TO LEIGH M. ROTHSCHILD INDIVIDUALLY OR DESIGNATED NON-PAM ENTITIES

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 10,462,129<br>Application No. 16/030,910 | July 10, 2017 | System and method for gaining access of devices based on user's identity | Leigh M. Rothschild |
| U.S. Patent No. 10,496,861<br>Application No. 15/807,837 | November 9, 2016 | Method and system for creating a symbology related to a captured image | Leigh M. Rothschild |
| U.S. Patent No. 10,498,732<br>Application No. 15/911,665 | January 2, 2008 | Digital verified identification system and method | Leigh M. Rothschild |
| U.S. Patent No. 10,552,472<br>Application No. 15/944,544 | April 3, 2017 | System and method for identifying and tagging individuals present in an image | Leigh M. Rothschild |
| U.S. Patent No. 10,600,101<br>Application No. 15/944,522 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |
| U.S. Patent No. 10,706,692<br>Application No. 15/961,744 | February 25, 2011 | Device, system and method for mobile devices to communicate through skin response | Leigh M. Rothschild |
| U.S. Patent No. 10,814,661<br>Application No. 15/833,204 | December 7, 2016 | Method and system for verifying authenticity of a document | Leigh M. Rothschild |
| U.S. Patent No. 11,007,450<br>Application No. 15/170,953 | December 22, 2015 | System and method for identifying building blocks and then displaying on a smart device the correct and/or alternative ways to assemble the blocks | Leigh M. Rothschild |
| U.S. Patent No. 11,013,951<br>Application No. 15/837,768 | December 12, 2016 | Platform for enabling omnidirectional movement of an exercising machine | Leigh M. Rothschild |
| U.S. Patent No. 11,063,955<br>Application No. 16/656,281 | October 17, 2019 | System and method for gaining access of devices based on user's identity | Leigh M. Rothschild |
| U.S. Patent No. 11,543,201<br>Application No. 16/805,300 | February 28, 2020 | Firearm analytics device | Leigh M. Rothschild |
| U.S. Patent No. 11,683,645<br>Application No. 16/715,874 | August 7, 2017 | System and method for adjusting audio parameters for a user | Leigh M. Rothschild |
| U.S. Patent No. 11,926,321<br>Application No. 18/332,970 | June 12, 2023 | Tracking for traffic lights | Leigh M. Rothschild |
| U.S. Patent No. 11,956,608<br>Application No. 18/323,752 | August 7, 2017 | System and method for adjusting audio parameters for a user | Leigh M. Rothschild |
| U.S. Patent No. 11,967,167<br>Application No. 17/942,854 | April 3, 2018 | System and method for identifying and tagging individuals present in an image | Leigh M. Rothschild |
| U.S. Patent No. 11,991,510<br>Application No. 18/325,524 | August 7, 2017 | System and method for adjusting audio parameters for a user | Leigh M. Rothschild |
| U.S. Patent No. 12,086,847<br>Application No. 16/828,432 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 12,094,235<br>Application No. 18/641,155 | April 3, 2018 | System and method for identifying and tagging individuals present in an image | Leigh M. Rothschild |
| U.S. Patent No. 12,108,227<br>Application No. 18/622,393 | August 7, 2017 | System and method for adjusting audio parameters for a user | Leigh M. Rothschild |
| U.S. Patent No. 12,208,797<br>Application No. 18/438,163 | June 12, 2023 | Tracking for traffic lights | Leigh M. Rothschild |
| U.S. Patent No. 12,208,798<br>Application No. 18/438,176 | June 12, 2023 | Tracking for traffic lights | Leigh M. Rothschild |
| U.S. Patent No. 12,243,080<br>Application No. 18/828,562 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |
| U.S. Patent No. 12,243,306<br>Application No. 18/828,623 | September 9, 2024 | System, method, and device to proactively detect in real time one or more threats in crowded areas | Leigh M. Rothschild |
| U.S. Patent No. 12,260,863<br>Application No. 18/656,244 | May 6, 2024 | Method and system for providing assistance for cognitively impaired users by utilizing artifical intelligence | Leigh M. Rothschild |
| U.S. Patent No. 12,307,327<br>Application No. 18/909,703 | October 8, 2024 | Method and an electronic device to decode a micro encrypted code | Leigh M. Rothschild |
| U.S. Patent No. 12,340,614<br>Application No. 18/886,806 | April 3, 2018 | System and method for identifying and tagging individuals present in an image | Leigh M. Rothschild |
| U.S. Patent No. 12,380,473<br>Application No. 19/069,914 | February 25, 2012 | Systems and methods for indicating the existence of accessible information pertaining to articles of commerce | Leigh M. Rothschild |
| U.S. Patent No. 12,406,571<br>Application No. 18/406,639 | January 8, 2024 | Methods and systems for detecting bad driving in other vehicles and reporting about the same | Leigh M. Rothschild |
| U.S. Patent No. 12,417,628<br>Application No. 19/067,655 | September 9, 2024 | System, method, and device to proactively detect in real time one or more threats in crowded areas | Leigh M. Rothschild |
| U.S. Patent No. 12,462,049<br>Application No. 18/796,250 | August 6, 2024 | Method and an electronic device for decoding information in a multi-dimensional encrypted code | Leigh M. Rothschild |
| U.S. Patent No. 12,462,130<br>Application No. 19/185,550 | October 8, 2024 | Method and an electronic device to decode a micro encrypted code | Leigh M. Rothschild |
| U.S. Patent No. 12,488,077<br>Application No. 18/750,725 | June 21, 2024 | Method and a system for providing an encrypted file to an authorized entity | Leigh M. Rothschild |
| U.S. Patent No. 12,500,422<br>Application No. 18/631,729 | April 10, 2024 | Smart energy recycling system and method thereof | Leigh M. Rothschild |
| U.S. Patent No. 12,503,840<br>Application No. 18/648,126 | April 26, 2024 | Cleaning apparatus and a method for cleaning of hand of a user | Leigh M. Rothschild |
| U.S. Patent No. 12,548,441<br>Application No. 19/170,998 | April 4, 2025 | AI-assisted vehicle communication and safety system for tailgating detection | Leigh M. Rothschild |

| Patent / Application No. | Earliest Effective Filing Date | Title | First Named Inventor |
|---|---|---|---|
| U.S. Patent No. 12,562,000<br>Application No. 19/232,514 | April 3, 2018 | System and method for identifying and tagging individuals present in an image | Leigh M. Rothschild |
| U.S. Patent No. 12,608,568<br>Application No. 19/008,536 | January 2, 2025 | Method and a system for adaptive generation of conversational content | Leigh M. Rothschild |
| U.S. Patent No. 12,609,120<br>Application No. 19/057,541 | May 6, 2024 | Method and system for providing assistance for cognitively impaired users by utilizing artificial intelligence | Leigh M. Rothschild |
| U.S. Patent No. 12,646,945<br>Application No. 19/276,677 | April 10, 2024 | Smart energy harvesting system and method thereof | Leigh M. Rothschild |
| U.S. Patent No. 12,653,455<br>Application No. 19/205,676 | June 24, 2025 | Method, wearable device and electronic device for detecting unintended onset of sleep (USL) | Leigh M. Rothschild |