**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **PAY AS YOU GO, LLC,**<br><br>Plaintiff,<br>v.<br><br>**VIASAT, INC.,**<br><br>Defendant. | C.A. No. 7:26-cv-00245-DC-DTG<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

**OPPOSED MOTION TO SEAL CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATIONS IN EXHIBIT 53 TO DEFENDANT VIASAT, INC.'S RULE 12(b)(1) MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

I. STATEMENT OF FACTS ..... 1

A. Viasat's Vice President & Chief Litigation Counsel First Suggested a "Peace Forever" Agreement and Insisted on a Draft Agreement that Included Mr. Rothschild ..... 1

B. In the Draft Agreement, PAYG is the Only Entity Granting a License, Covenant Not to Sue, and Release to the Patent-in-Suit and Related Patents ..... 2

C. Despite the Confidential Marking, Viasat Publicly Filed the FRE 408 Settlement Negotiations Without Notifying PAYG ..... 3

II. LEGAL STANDARD ..... 4

III. ARGUMENT ..... 4

A. Exhibit 53 Should Remain Sealed Because It Does Not Support Viasat's Argument and Viasat Seeks to Disclose Exhibit 53 Solely to Harass PAYG, PAM, and Mr. Rothschild ..... 5

1. The E-Mail and Draft Agreement Only Support that PAYG has All Rights in the Patent-in-Suit ..... 5

2. Viasat's Public Filing of Exhibit 53 Was Intended Only to Harass PAYG, PAM and Mr. Rothschild ..... 7

B. Exhibit 53 Should Remain Sealed Because There is No Public Interest in Disclosing a Draft Agreement that was Only Provided Subject to Confidentiality ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Cases**

*A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, 176 F.4th 1326 (Fed. Cir. 2026) .......................... 6

*Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*,
604 F.3d 1354 (Fed.Cir. 2010) .......................................................................................... 7

*Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., In re*,
No. 15-MD-2666 (JNE/DTS), 2020 WL 4035548 (D. Minn. July 17, 2020) .......................... 9

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021) .............................................................................................. 4

*Bradley on behalf of AJW v. Ackal*,
954 F.3d 216 (5th Cir. 2020) .............................................................................................. 4

*Cardwell v. Altec Indus., Inc.*,
No. 3:19-CV-527-DPJ-FKB, 2021 WL 6618652 (S.D. Miss. Mar. 15, 2021).......................... 9

*Creel v. Humphreys Cnty.*,
Nos. 4:12-CV-89-MPM-JMV, 2014 WL 583484 (N.D. Miss. Feb. 14, 2014) .......................... 9

*Freeman v. Hurst*,
No. 2:22-CV-01433-RFB-MDC, 2026 WL 1506719 (D. Nev. May 28, 2026) ......................... 9

*Holland v. Summit Autonomous, Inc.*,
No. CIV. A. 00-2313, 2001 WL 930879 (E.D. La. Aug. 14, 2001) .......................................... 9

*Intell. Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed.Cir. 2024) ............................................................................................ 7

*LEAP Sys., Inc. v. MoneyTrax, Inc.*,
638 F.3d 216 (3d Cir. 2011) ............................................................................................ 10

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978)............................................................................................................ 8

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) .................................................................................................. 9

**Other Authorities**

Standing Order Regarding Filing Documents Under Seal and Redacted Public Version (Jan. 9, 2026) (U.S. Magistrate Judge Derek T. Gilliland) ......................................................... 3, 4, 8

**Rules**

Federal Rule of Evidence 408.......................................................................................... 1, 3, 8

Local Rule CV-5.2 ........................................................................................................... 1, 3

Plaintiff Pay As You Go, LLC ("PAYG") respectfully moves under Local Rule CV-5.2 and the Court's inherent authority to seal Exhibit 53 to Defendant Viasat, Inc.'s Motion Under Fed. R. Civ. P. 12(b)(1) to Dismiss Plaintiff's Complaint for Lack of Standing (Dkt. No. 16-54). Exhibit 53 contains confidential settlement communications protected by Federal Rule of Evidence 408 ("FRE 408"), including (1) email correspondence expressly marked "CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION" and (2) a draft settlement agreement marked "DRAFT HIGHLY CONFIDENTIAL FRE 408." This Court sealed Exhibit 53 because of a stipulation filed by the parties (Dkt. Nos. 19, 20); however, Viasat required PAYG to file a motion to maintain the document under seal as a condition for Viasat agreeing to the stipulation.

As explained below, Exhibit 53 should remain sealed because it does not support Viasat's motion to dismiss and serves no purpose other than for Viasat to harass PAYG, Patent Asset Management LLC (PAYG's sole member), and Mr. Leigh Rothschild (PAYG's manager).

## I. STATEMENT OF FACTS

On June 29, 2026, PAYG filed its complaint for patent infringement against Viasat. (Dkt. No. 1). Viasat's in-house counsel, Colin Ward, Vice President, Chief Litigation Counsel reached out to PAYG on July 3, 2026, to initiate settlement discussions. (Dkt. No. 16-54 at 5).

### A. Viasat's Vice President & Chief Litigation Counsel First Suggested a "Peace Forever" Agreement and Insisted on a Draft Agreement that Included Mr. Rothschild

The initial settlement discussions in July 2026 solely addressed a license to the patent-in-suit and related patents owned by PAYG. Mr. Ward was the first person to propose a "peace forever" deal with Mr. Rothschild because of concerns about litigation involving other "Rothschild companies." (Ex. 53 at 4).

PAYG continued discussions with Mr. Ward who insisted that an agreement with PAYG and Patent Asset Management, LLC (PAYG's sole member) ("PAM") would not be sufficient and

that Viasat specifically needed language beyond PAM so it could get "global peace" with Mr. Rothschild. (Ex. 53 at 2). Mr. Rothschild is the manager of PAYG and CEO of PAM.

PAYG took two weeks to respond because [redacted] (Ex. 53 at 2). PAYG marked the email response "CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION" and attached the draft agreement Viasat requested, which was marked as "DRAFT HIGHLY CONFIDENTIAL FRE 408." (*Id.* at 2, 7).

**B. In the Draft Agreement, PAYG is the Only Entity Granting a License, Covenant Not to Sue, and Release to the Patent-in-Suit and Related Patents**

The draft agreement proposed [redacted] (Ex. 53 at 7). The draft agreement [redacted] (*Id.*).

[redacted] (Ex. 53 at 8). [redacted] (Ex. 53 at 25). [redacted] (*Id.* at 9-11 (§§2.1-2.3)).

The draft agreement provided [redacted] (*Id.* at 28-31, 32-34). [redacted] (*Id.* at 11-15). [redacted] The draft agreement proposed [redacted] (*Id.* at 15 (§5.1)).

The week after sending the draft, PAYG followed up with Mr. Ward who responded that Viasat was considering the draft agreement and a counterproposal. (Ex. A).[1] Viasat never contested the confidentiality designations on the email and draft agreement.

On September 23, 2026, PAYG sent an email to Viasat's outside counsel following up on the draft agreement. (Ex. B). Viasat's counsel said that he would follow up with Viasat. (*Id.*).

### C. Despite the Confidential Marking, Viasat Publicly Filed the FRE 408 Settlement Negotiations Without Notifying PAYG

On October 12, 2026, a federal holiday, Viasat filed its Motion to Dismiss contending that PAYG lacked standing to file the lawsuit and publicly filed the email communication marked "CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION" and the draft agreement marked "DRAFT HIGHLY CONFIDENTIAL FRE 408" as Exhibit 53. (Dkt. Nos. 16, 16-54). In its brief, Viasat dropped a footnote arguing that FRE 408 designations "cannot prevent the Court from considering the evidence." (Dkt. No. 16 at 8 n.3). Viasat never addressed the confidentiality markings or argued that FRE 408 communications should not be treated as confidential. (*See id.*).

On October 13, 2026, PAYG sent an email to Viasat contending that Viasat should have filed Exhibit 53 under seal pursuant to WDTX Local Rule CV-5.2 and requested Viasat to promptly withdraw Exhibit 53 and re-file it under seal. (Ex. C at 2). If Viasat would not re-file Exhibit 53 under seal, PAYG requested a meet-and-confer because PAYG intended to file an Emergency Motion to Seal that day. (*Id.*). Viasat did not agree to re-file Exhibit 53 under seal and responded that they were not available until the afternoon. (*Id.*). In preparation for the meet-and-confer, PAYG sent Viasat the Court's Standing Order Regarding Filing Documents Under Seal and Redacted Public Version ("Standing Order on Filing Under Seal"), which grants leave to

[1] Exhibit 53 did not include the complete series of emails. Exhibit A includes subsequent emails.

parties in patent cases to file confidential information under seal without a motion. (*Id.* at 1).[2]

At the meet and confer, Viasat contended that settlement negotiations are not confidential and that PAYG's confidential marks did not make the documents confidential. Viasat further contended that it was not required to notify PAYG that it was publicly filing the confidential documents. When PAYG raised that Viasat could have filed Exhibit 53 under seal pursuant to the Court's Standing Order on Filing Under Seal and negotiated redactions later, Viasat's lead counsel only reiterated that the documents were not confidential. Viasat eventually agreed that it would stipulate to temporarily seal Exhibit 53 provided PAYG filed a motion to seal Exhibit 53, which Viasat would oppose. (*See* Dkt. No. 19). Viasat also required that Exhibit 53 would be unsealed if PAYG did not file a motion to seal. (*Id.*). PAYG therefore files this Motion to Seal Exhibit 53.

## II. LEGAL STANDARD

There is a presumption that the public has the right to inspect and copy judicial records. *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020). This presumption is not absolute and the Fifth Circuit "has not assigned a particular weight to the presumption"; "[n]or has this court interpreted the presumption in favor of access as creating a burden of proof." *Id.* at 225. The Court "must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021) (internal quotes and citation removed).

## III. ARGUMENT

Exhibit 53 should remain sealed in its entirety. First, Exhibit 53 does not support Viasat's standing argument and instead contradicts it. Its public disclosure therefore serves no legitimate purpose and instead only serves as a means by which Viasat exposes PAYG's, PAM's, and Mr.

---

[2] The email contained a typo referring to the incorrect judge. PAYG apologizes for the error.

Rothschild's highly confidential licensing and settlement strategy. Second, Exhibit 53 consists of confidential settlement communications that PAYG provided only at Viasat's specific request for a draft agreement addressing PAYG, PAM, and Mr. Rothschild. PAYG would not have disclosed the information had it known that Viasat would not respect the confidentiality designations.

### A. Exhibit 53 Should Remain Sealed Because It Does Not Support Viasat's Argument and Viasat Seeks to Disclose Exhibit 53 Solely to Harass PAYG, PAM, and Mr. Rothschild

The Court should maintain Exhibit 53 under seal because it does not support Viasat's argument that PAYG lacks standing and Viasat's only purpose for filing it is to harass PAYG, PAM, and Mr. Rothschild by disclosing confidential business strategy for licensing patents.

#### 1. The E-Mail and Draft Agreement Only Support that PAYG has All Rights in the Patent-in-Suit

The Court should not unseal Exhibit 53 because it contradicts Viasat's motion. Viasat's motion to dismiss is premised on the argument that PAYG's right to sue is illusory because PAM and Mr. Rothschild can grant licenses to the patent-in-suit. (Dkt. No. 16 at 1). However, the confidential email and draft agreement support that ***only*** PAYG has the right to license.

The email stated that, to draft the agreement, [redacted] (Ex. 53 at 2). If PAM and Mr. Rothschild had the right to sign and make warranties and representations on behalf of companies they controlled, as Viasat contends, then [redacted] The email therefore does not support Viasat's argument that PAM and Mr. Rothschild can grant licenses to patents for any of their affiliates.

The draft agreement also supports PAYG's standing and rebuts Viasat's argument. In the draft agreement, [redacted]

[redacted] (*Supra* §I.B). [redacted] (*Id.*).

Viasat makes a convoluted argument that under the definition of "Affiliates" PAYG is an "Affiliate" of both PAM and Mr. Rothschild, so PAM and Mr. Rothschild necessarily control the patent-in-suit. (Dkt. No. 16 at 8). However, the draft agreement [redacted] (Ex. 53 at 9 (§2.1)). Again, [redacted] The draft agreement provides [redacted] (*Id.* at 28-31, 32-34).

Viasat also falsely alleges that PAM and Mr. Rothschild grant "a license" to "Viasat and its Affiliates" in Sections 3.1 and 4.1. [redacted] (Ex. 53 at 11-12, 13-14). [redacted] (Ex. 53 at 9-10). [redacted] (*See id.*). Viasat's argument that the covenants not to sue granted by PAM and Mr. Rothschild are the same as licenses is specious because granting a covenant not to sue does not mean PAM and Mr. Rothschild can grant licenses. (*See* Dkt. No. 16 at 6 n.2). Anyone can grant a covenant not to sue to the patent-in-suit even if they have no rights in the patent. The fact that PAM and Mr. Rothschild grant a covenant not to sue therefore does not support the allegation that PAM and Mr. Rothschild can grant licenses to the patent-in-suit.

Even under Viasat's convoluted "Affiliate" argument that PAYG is an "Affiliate" of both PAM and Mr. Rothschild, such residual rights to PAM and Mr. Rothschild do not undercut that PAYG has an exclusionary right sufficient to have standing to sue. *A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, 176 F.4th 1326, 1334 (Fed. Cir. 2026); *Alfred E. Mann Found. For Sci. Rsch. v.*

*Cochlear Corp.*, 604 F.3d 1354, 1357, 1361 (Fed.Cir. 2010). The Federal Circuit has noted that "the patent owner had not transferred away all rights, even under an exclusive license with rights to sublicense, where the patent owner retained the right to sue." *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 816 (Fed.Cir. 2024) (*citing Mann*, 604 F.3d at 1361).

Viasat's motion to dismiss argues that "a patent owner's right to sue is 'illusory,' and thus cannot support standing, when another party could moot any suit brought by the plaintiff by granting a royalty-free sublicense to the accused infringer." (Dkt. No. 16 at 1 (internal quotes and citation removed)). However, the draft agreement [redacted] (Ex. 53 at 15 (§5)). [redacted] (Dkt. No. 16 at 8). [redacted] (*Compare* Ex. 53 at 28-31, 32-34 *with* Ex. 53 at 25).

Viasat also falsely implies that Exhibit 53 supports that "Mr. Rothschild and PAM offered Viasat a proposed 'global agreement.'" (Dkt. No. 16 at 7). However, Exhibit 53 clearly shows that it was Viasat who first sought the "total peace" agreement and PAYG was only responding to Viasat's request. (Ex. 53 at 2-4). PAYG did not offer such an agreement until it was raised by Viasat. (*Id.*). The draft agreement was only created in response to Viasat's explicit request and Viasat's apparent interest in engaging in settlement discussions. (*Id.*). Exhibit 53 therefore does not support Viasat's motion to dismiss.

**2. Viasat's Public Filing of Exhibit 53 Was Intended Only to Harass PAYG, PAM and Mr. Rothschild**

With Exhibit 53 only rebutting Viasat's standing argument, the only reasonable conclusion is that Viasat publicly filed the email and draft agreement to harass PAYG, PAM, and Mr.

Rothschild. Viasat's motion laments how few agreements related to Mr. Rothschild are publicly available and "lurking under the cover of confidentiality agreements." (Dkt. No. 16 at 3). As Viasat admits, it was compelled to disclose the FRE 408 communications and agreement because "if Viasat had signed it, this agreement would likely never have seen the light of day." (Dkt. No. 16 at 9). Viasat's mission to harass PAYG, PAM, and Mr. Rothschild is clear by the signposts it unequivocally disregarded before publicly filing Exhibit 53:

- Viasat intentionally ignored the "CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION" and "DRAFT HIGHLY CONFIDENTIAL FRE 408" markings clearly placed on the email and draft agreement;
- Viasat intentionally chose not to notify PAYG in advance of publicly filing Exhibit 53 and choose to file the document on a Federal holiday when courts are closed so PAYG could not seek immediate relief;
- Viasat intentionally chose not to file Exhibit 53 under seal pursuant to the Court's Standing Order on Filing Under Seal and later negotiate redactions, even though Viasat could have done this without prior notice to PAYG; and
- Viasat intentionally chose not to at least redact the proposed settlement values from the emails and draft agreement, when that information is irrelevant to standing and could only fall under a prohibited use under FRE 408.

Viasat could have maintained its objection to confidentiality and still file Exhibit 53 under seal; however, Viasat chose to publicly file Exhibit 53 unredacted. Viasat refused to withdraw the public version of Exhibit 53 and refile it as sealed. (Ex. C). Instead, Viasat extracted a concession requiring PAYG to file an opposed motion to seal Exhibit 53 before Viasat would agree to a stipulation to only temporarily seal Exhibit 53 to October 20, 2026. (Dkt. No. 19). Viasat's pattern of behavior demonstrates that the sole purpose of publicly filing Exhibit 53 was harassment.

Because Exhibit 53 does not support Viasat's motion to dismiss and was only filed for the purpose of harassing PAYG, PAM, and Mr. Rothschild, the Court should maintain Exhibit 53 under seal. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to

gratify private spite or promote public scandal'," "or as sources of business information that might harm a litigant's competitive standing." (citations omitted)); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, No. 15-MD-2666 (JNE/DTS), 2020 WL 4035548, at *2 (D. Minn. July 17, 2020)("It would also be inappropriate for this Court to cede unilateral control of the sealing process to litigants by unsealing any document they include with a dispositive motion, no matter how irrelevant it may be to the motion's disposition."); *see Freeman v. Hurst*, No. 2:22-CV-01433-RFB-MDC, 2026 WL 1506719, at *2 (D. Nev. May 28, 2026).

### B. Exhibit 53 Should Remain Sealed Because There is No Public Interest in Disclosing a Draft Agreement that was Only Provided Subject to Confidentiality

Exhibit 53 discloses settlement discussions that were never completed between two private parties. With respect to settlement documents, "if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994); *Cardwell v. Altec Indus., Inc.*, No. 3:19-CV-527-DPJ-FKB, 2021 WL 6618652, at *2 (S.D. Miss. Mar. 15, 2021) ("The Court finds that [t]he public's interest in this private settlement is minimal and outweighed by the need for confidentiality."); *Holland v. Summit Autonomous, Inc.*, No. CIV. A. 00-2313, 2001 WL 930879, at *2 n. 1 (E.D. La. Aug. 14, 2001), *aff'd sub nom. Holland v. Summit Tech., Inc.*, No. CIV. A. 00-2313, 2001 WL 1132030 (E.D. La. Sept. 21, 2001) ("Courts have distinguished protective orders issued in cases involving important public interests from those involving matters of interest only to private litigants.").

The draft agreement also included proposed settlement amounts, which courts have held is sufficient to seal a document. *Cardwell*, 2021 WL 6618652, at *2 ; *Creel v. Humphreys Cnty.*, Nos. 4:12-CV-89-MPM-JMV, 2014 WL 583484, at *1 (N.D. Miss. Feb. 14, 2014).

Furthermore, this is not a completed settlement document and is instead a first draft. PAYG had no intention of disclosing the email or the draft agreement to the public. PAYG marked the email and draft agreement as confidential. (Ex. 53 at 2, 7). If PAYG had known that Viasat would not comply with the confidentiality designations, PAYG would not have disclosed the information. Viasat also never contested the confidentiality designations before publicly filing Exhibit 53. *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222–23 (3d Cir. 2011) ("The parties are private entities, their dispute has no impact on the safety and health of the public, and their settlement agreements demonstrate a clear intent to maintain confidentiality."). As Viasat admitted, Viasat knew that PAYG intended to keep the agreement confidential because the draft agreement also contained a confidentiality provision. (Dkt. 16 at 9). Publicly disclosing Exhibit 53 will harm PAYG and undermine settlement policy favoring candid settlement negotiations. The settlement communications include sensitive business information such as draft licensing terms and the proposed license amount, which should not be publicly disclosed.

At a minimum, Exhibit 53 should not be unsealed in its entirety and should instead be subject to redaction to remove information that should remain sealed.

## CONCLUSION

For the foregoing reasons, PAYG respectfully requests that the Court grant the Opposed Motion to Seal and: (1) seal Exhibit 53 to Viasat's Motion to Dismiss (Dkt. No. 16-54); (2) direct the Clerk to restrict public access to Exhibit 53; and (3) grant any further relief the Court deems appropriate.

October 20, 2026

Respectfully submitted,

By: */s/David R. Bennett*
David R. Bennett (IL Bar No.: 6244214)
Steven G. Kalberg (IL Bar No.: 6336131)
DIRECTION IP LAW
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Counsel for Plaintiff*
*Pay As You Go, LLC*

## CERTIFICATE OF CONFERENCE

I certify that on October 13, 2026, PAYG contacted Viasat's counsel to request that Viasat withdraw Exhibit 53 and refile it under seal. Defendant would not agree to the request and Defendant stated that it would oppose any motion to seal Exhibit 53. Furthermore, although Exhibit 53 has been sealed by the Court (Dkt. No. 20), Defendant required PAYG to file the motion to seal and, if the motion was not filed, Defendant contended that the Exhibit 53 would be unsealed. (Dkt. No. 19 at ¶¶2-3). The dispute is therefore ripe for resolution by the Court.

*/s/David R. Bennett*
David R. Bennett

## CERTIFICATE OF SERVICE

I certify that on October 20, 2026, I served a true and correct copy of the foregoing document via the Court's Electronic Filing System, which will electronically send notice to all counsel of record.

*/s/David R. Bennett*
David R. Bennett