**PUBLIC - REDACTED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **PAY AS YOU GO, LLC,**<br><br>Plaintiff,<br>v.<br><br>**VIASAT, INC.,**<br><br>Defendant. | C.A. No. 7:26-cv-00245-DC-DTG<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

**PAY AS YOU GO, LLC'S OPPOSITION TO VIASAT, INC.'S MOTION UNDER FED.R.CIV.P. 12(b)(1) TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF STANDING**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

TABLE OF EXHIBITS ........ v

I. STATEMENT OF FACTS ........ 2

A. PAYG is a Single Member LLC formed October 2, 2020, with PAM as its Sole Member and Owner and Mr. Rothschild as its Manager ........ 3

B. PAYG is the Assignee of All Right, Title, and Interest in the ‘127 Patent Including the Sole Right to Sue and Collect Past, Present, and Future Damages ........ 3

C. The June 2016 Valve Agreement Only Covers Patents Naming Mr. Rothschild as an Inventor and Does Not Include the ‘127 Patent ........ 4

D. The May 2020 GNOME Agreement Also Only Covers Patents Naming Mr. Rothschild as an Inventor and Does Not Include the ‘127 Patent ........ 4

E. Viasat Speculates Regarding the Contents of the Discord Agreement ........ 5

F. During this Litigation, PAYG Proposed a Settlement Agreement to Viasat in Which PAYG is the Only Entity Granting Rights to the ‘127 Patent ........ 5

1. Viasat Initiated Discussions and Specifically Requested an Agreement that Included PAYG, PAM, and Mr. Rothschild ........ 5

2. In the Draft Agreement, PAYG is the Only Entity Granting a License, Covenant Not to Sue, and Release to the Patent-in-Suit and the Only Entity Who Would be Paid for Such Grants ........ 6

II. LEGAL STANDARD ........ 7

III. ARGUMENT ........ 9

A. PAYG has Constitutional and Statutory Standing Because It Was Assigned All Right, Title, and Interest in the ‘127 Patent Including the Right to Sue and Collect Damages, It Suffered Injury in Fact, and It is the “Patentee” ........ 10

B. The Other Agreements and Draft Agreement Raised by Viasat Are Not Relevant to Standing ........ 11

1. The Valve Agreement Was Directed to a Limited Set of Patents That Did Not Include the ‘127 Patent ........ 11

2. The GNOME Agreement Was Also Directed Only to Patents for Which Mr. Rothschild is the Inventor that Did Not Include the ‘127 Patent ........ 12

3. Viasat’s Speculation on the Discord Agreement Does Not Impact PAYG’s Standing ........ 12

4. The FRE 408 Draft Agreement Proposed to Viasat to Settle this Case Supports that PAYG is the Only Entity with Standing .................. 13

C. Viasat Relies on Patent Cases in Which Written Agreements Assigned or Licensed Rights Away from the Plaintiff but No Such Agreements Exist Here ........................................................................................................... 15

D. Even if PAM and Mr. Rothschild Had Some Residual Ability to Grant a Nonexclusive Licenses to the ‘127 Patent, PAYG Still Has Standing ................ 15

E. Viasat’s Motion Attached 53 Exhibits but Only Relied on Six Exhibits to Support its Argument of Lack of Standing; the Remaining Exhibits Only Serve to Harass PAYG, PAM, and Mr. Rothschild with Irrelevant Arguments ........................................................................................................ 16

F. Jurisdictional Discovery Should be Denied Because Viasat’s Motion Has Identified No Fact Calling PAYG’s Standing into Question .............................. 18

G. Viasat’s Motion Unreasonably and Vexatiously Multiplies the Proceedings ........................................................................................................................ 19

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*,
176 F.4th 1326 (Fed.Cir. 2026) .......... 7, 8, 14

*Abbott Labs. v. Diamedix Corp.*,
47 F.3d 1128 (Fed.Cir. 1995) .......... 8

*Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*,
604 F.3d 1354 (Fed.Cir. 2010) .......... 14

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
434 F.3d 1336 (Fed.Cir. 2006) .......... 8, 9

*Crown Die & Tool Co. v. Nye Tool & Mach. Works,*
261 U.S. 24 (1923).......... 8, 9, 11

*Debowale v. U.S. Inc.*,
62 F.3d 395 (5th Cir. 1995) .......... 11

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
823 F.3d 615 (Fed.Cir. 2016) .......... 15

*Enzo APA & Son, Inc. v. Geapag A.G.*,
134 F.3d 1090 (Fed.Cir. 1998) .......... 9

*Intell. Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed.Cir. 2024) .......... passim

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).......... 8

*Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*,
925 F.3d 1225 (Fed.Cir. 2019) .......... 7, 8, 9, 11

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed.Cir. 2007) .......... 10, 11

*Mullen v. Mullin*,
No. 25-30604, 2026 WL 2607785 (5th Cir. Sept. 3, 2026) .......... 19

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed.Cir. 1995) .......... 9, 10, 11

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed.Cir. 2020) .......... 8, 9, 15

*Speedplay, Inc. v. Bebop, Inc.*,
211 F.3d 1245 (Fed.Cir. 2000) .......... 9, 10

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
52 F.4th 1340 (Fed.Cir. 2022) .......... 15

*United States v. Jackson*,
426 F.3d 301 (5th Cir. 2005) .......... 11

*Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*,
19 F.4th 1315 (Fed.Cir. 2021) ........ 9

*Waterman v. MacKenzie*,
138 U.S. 252 (1891)........ 9, 10, 11

**Statutes**

28 U.S.C. §1927........ 2, 10, 20

35 U.S.C. §100(d) ........ 8, 10

35 U.S.C. §261........ 9

35 U.S.C. §281........ 8, 10

**Rules**

Rule 41(b), Fed.R.Civ.P........ 19

# TABLE OF EXHIBITS

Exhibits to this opposition are attached to the Declaration of David R. Bennett ("Bennett Decl."):

| | |
|---|---|
| Exhibit A | Certificate of Good Standing, Pay As You Go, LLC |
| Exhibit B | Operating Agreement Manager Managed (SEALED) |
| Exhibit C | Certificate of Good Standing, Patent Asset Management, LLC |
| Exhibit D | Bank Letter for Pay As You Go, LLC (SEALED) |
| Exhibit E | Assignment of Patent Rights |
| Exhibit F | IRS Guidance – Single member limited liability companies |
| Exhibit G | Pay As You Go, LLC W-9 (SEALED) |

Declaration of Leigh M. Rothschild

Plaintiff Pay As You Go, LLC ("PAYG") files this opposition to Viasat's Motion Under Fed.R.Civ.P. 12(b)(1) to Dismiss Plaintiff's Complaint for Lack of Standing (Dkt. 16).

Viasat's motion has no basis in fact or law. The written assignment expressly conveyed to PAYG "all right, title, and interest" in U.S. Patent No. 7,013,127 ("the '127 Patent," "patent-in-suit"), including "all causes of action and other enforcement rights" and the right to recover for past, present, and future infringement. The assignment was publicly recorded and attached to PAYG's Amended Complaint. Viasat neither acknowledges nor challenges it and PAYG did not transfer any rights to Patent Asset Management LLC ("PAM"), PAYG's sole member and 100% owner, or to Mr. Rothschild, PAYG's Manager. Instead, Viasat attempts to manufacture a standing defect from unrelated agreements, a draft agreement, incomplete documents, and speculation that PAM and Mr. Rothschild possess rights they do not hold. At most, PAM and Mr. Rothschild are acting on PAYG's behalf in their respective capacities as its sole member and Manager, as is typical for those roles in an LLC.

PAYG has constitutional and statutory standing because it holds sole legal title to the '127 Patent and the sole right to sue for infringement and collect damages and is the "patentee." These rights are concrete, not illusory. The documents on which Viasat relies do not undermine those rights or support Viasat's standing theory. The Valve and GNOME Agreements do not cover the '127 Patent and therefore are irrelevant to PAYG's standing. The Discord Agreement does not contradict PAYG's ownership of all right, title, and interest in the '127 Patent or its sole right to sue for infringement and collect damages. The draft FRE 408 settlement agreement confirms that PAYG alone possesses the right to license, enforce, and collect damages for infringement of the '127 Patent. Viasat identifies no competing owner, retained right, conflicting license, or defect in PAYG's written assignment; instead, it substitutes conjecture and insinuation for evidence. Article

III does not require PAYG to disprove unsupported theories about agreements that do not concern the patent-in-suit. The Court should therefore deny Viasat's motion.

The Court should also award PAYG the fees and expenses incurred in responding to this baseless motion under 28 U.S.C. §1927 and the Court's inherent authority because the motion unreasonably and vexatiously multiplies the proceedings. Viasat ignored the dispositive written assignment and relied on agreements that do not support its argument. It attached 53 exhibits but relied on only six to support its standing argument; the remaining exhibits concern other companies associated with Mr. Rothschild that have nothing to do with PAYG or the '127 Patent. Viasat also publicly filed a confidential settlement document from this case, requiring PAYG to file an opposed motion to seal the exhibit. PAYG requested that Viasat withdraw its motion in light of the documents attached to the Amended Complaint, including the assignment, and warned that PAYG would otherwise seek fees. (Bennett Decl. at ¶10). Viasat refused to withdraw the motion and instead insisted that PAYG submit evidence in opposition to its baseless Rule 12(b)(1) motion, further unreasonably and vexatiously multiplying the proceedings. (*Id.* at ¶¶9-10).

## I. STATEMENT OF FACTS

On June 29, 2026, PAYG filed its Complaint for Patent Infringement against Viasat asserting that Viasat's pay-per-usage pricing plan infringed claim 1 of the U.S. Patent No. 7,013,127 ("the '127 Patent"). (Dkt. No. 1). PAYG filed an Amended Complaint on October 27, 2026, which added further factual assertions regarding standing in addition to adding allegations of fraud. (Dkt. 31). Attached to the Amended Complaint are PAYG's Certificate of Good Standing, the recorded assignment of the '127 Patent to PAYG, and PAM's Certificate of Good Standing. (Dkt. 31 at Ex. B-D). The '127 Patent is titled Systems and Methods for Employing "Pay-As-You-Go" Telecommunication Services and was issued on March 14, 2006. (Dkt. 31 at Ex. A). The inventors of the '127 Patent are Harold S. Wills and David A. Steinberg; Mr.

Rothschild is not an inventor of the '127 Patent. (*See id.*).

**A. PAYG is a Single Member LLC formed October 2, 2020, with PAM as its Sole Member and Owner and Mr. Rothschild as its Manager**

PAYG is a Wyoming limited liability company ("LLC") formed on October 2, 2020. (Ex. A). PAYG is a single member LLC with Patent Asset Management, LLC ("PAM") as its sole member who owns 100% of PAYG. (Ex. B at 2). PAM is a Florida limited liability company that was formed on May 23, 2017. (Ex. C at 1). PAM's ownership of PAYG does not grant PAM any right to the assets of PAYG or any ownership interest in those assets. (Ex. B at 1).

Mr. Leigh Rothschild is the Manager of PAYG. (*Id.* at 4). As the Manager of PAYG, Mr. Rothschild is an agent of PAYG and has the authority to bind PAYG in the ordinary course of PAYG's business. (*Id.* at 5). PAYG has its own bank account. (Ex. D).

**B. PAYG is the Assignee of All Right, Title, and Interest in the '127 Patent Including the Sole Right to Sue and Collect Past, Present, and Future Damages**

On December 5, 2022, PAYG was assigned the '127 Patent by EMB/IP, LLC. (Ex. E). EMB/IP, LLC is not related to or affiliated with PAYG, PAM, or Mr. Rothschild. (Declaration of Leigh M. Rothschild ("Rothschild Decl.") at ¶5). The assignment assigned, transferred, and conveyed to PAYG "all right, title, and interest that exist today and may exist in the future" to the '127 Patent. (Ex. E at 1). PAYG was further assigned, transferred, and conveyed "all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents [including the '127 Patent]…, including without limitation, all causes of action and other enforcement rights for: (i) damages, (ii) injunctive relief, (iii) any other remedies of any kind for past, current, and future infringement." (*Id.* at §(f)). PAYG was also assigned "all rights to collect royalties and other payments under or on account of any of the Patents [including the '127 Patent]…." (*Id.* at §g). No rights were retained by the assignor. (*See*, *generally*, *id.*).

Neither PAM nor Mr. Rothschild have rights in the '127 Patent. (Rothschild Decl. ¶¶2-4).

**C. The June 2016 Valve Agreement Only Covers Patents Naming Mr. Rothschild as an Inventor and Does Not Include the '127 Patent**

Mr. Rothschild and Display Technologies, LLC, entered into a Global Settlement and License Agreement with Valve Corporation on June 14, 2016 ("Valve Agreement"). (Dkt. 16, Ex. 48). The "Licensed Patents" included 20 patents in Exhibit C and could include 15 patents in Exhibit D if Mr. Rothschild or Display Technologies gained control or ownership of any of those patents. (*Id.* at 2 (§1.4), 18-21). The agreement was directed to "patents on which Inventor [Mr. Rothschild] is the named inventor." (*Id.* at 1).

Mr. Rothschild is the sole named inventor of all the patents listed in Exhibits C and D of the Valve Agreement. (*Id.*). The Valve Agreement does not include the '127 Patent. (*See id.*).

**D. The May 2020 GNOME Agreement Also Only Covers Patents Naming Mr. Rothschild as an Inventor and Does Not Include the '127 Patent**

On May 20, 2020, Mr. Rothschild and Rothschild Patent Imaging entered into an agreement with GNOME Foundation ("GNOME Agreement"). (Dkt. 16 at Ex. 51). The GNOME Agreement involved "Grantor Patents," which is United States Patent No. 9,936,086 ("the '086 Patent") and related patents, and "Rothschild Patents," which are patents that name Leigh Rothschild as an inventor. (*Id.* at 2). Mr. Rothschild is also the inventor of the '086 Patent.

Viasat misrepresents the scope of the GNOME Agreement by selectively quoting "Rothschild Patents" as including "all patents 'owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity'," while omitting the preceding limiting language. (Dkt. 16 at 5). The full provision is "(ii) ***all patents and patent applications to which any of the foregoing [Patents that name Leigh Rothschild as an inventor] claim priority***, whether directly or indirectly ***and are*** owned on the execution date of this Agreement by Leigh Rothschild or a Rothschild Entity." (Dkt. 16, Ex. 51 at 2) (emphasis added). The definition's final sentence

confirms the limitation to patents where Mr. Rothschild is the sole inventor by excluding "those patents where Rothschild is named with another inventor or inventors." (*Id.*). The GNOME Agreement does not include the '127 Patent because Mr. Rothschild is not an inventor. (*See id.*).

The GNOME Agreement also did not grant a license. Instead, the agreement grants covenants not to sue and releases to GNOME and its affiliates if they remain non-profit organizations, and to any individuals or entities solely with respect to software for the Open Source Initiative that must be provided without a royalty or other fee for the sale. (*Id.* at 2-4). The GNOME Agreement was a donation to GNOME. (*Id.* at 7).

### E. Viasat Speculates Regarding the Contents of the Discord Agreement

Viasat discusses a settlement offer made to Discord and attaches the first page and signature pages of the Settlement and License Agreement between Display Technologies, LLC, PAM, and Mr. Rothschild, on one side, and Discord, Inc. on the other side. (Dkt. 16 at 7 (citing *Valve Corporation v. Rothschild*, No. 23-1016, Docket No. 75-23 (W.D. Wash. March 28, 2025)). The exhibit does not include the agreement's substantive terms. (*See id.*). Viasat speculates as to what the agreement "appears to include" or is "likely" to be for, and "assum[es] that the preamble is accurate." (*Id.*).

### F. During this Litigation, PAYG Proposed a Settlement Agreement to Viasat in Which PAYG is the Only Entity Granting Rights to the '127 Patent

#### 1. Viasat Initiated Discussions and Specifically Requested an Agreement that Included PAYG, PAM, and Mr. Rothschild

After the lawsuit was filed, Mr. Ward, Viasat's Vice President, Chief Litigation Counsel, initiated settlement discussions with PAYG. (Dkt. 16, Ex. 53 at 4). Mr. Ward stated that Viasat was not interested in a deal only with PAYG and proposed a "peace forever" deal with Mr. Rothschild because of concerns about litigation involving other "Rothschild companies":

> We have also further considered your settlement offer and done some research,

[redacted]

(*Id.* at 4). PAYG's counsel responded that he would "pass along [the] request for 'peace forever'" to PAYG. (*Id.* at 3). As discussions continued, Mr. Ward again insisted that an agreement with PAYG and PAM would not be sufficient and that Viasat specifically needed language beyond PAM so it could get "global peace" with Mr. Rothschild:

[redacted]

(*Id.* at 2). After two weeks, PAYG responded that [redacted] (Ex. 53 at 2). PAYG marked the email response "CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION" and attached the draft agreement to Viasat marked "DRAFT HIGHLY CONFIDENTIAL FRE 408." (*Id.* at 2, 7).

**2. In the Draft Agreement, PAYG is the Only Entity Granting a License, Covenant Not to Sue, and Release to the Patent-in-Suit and the Only Entity Who Would be Paid for Such Grants**

The draft agreement to Viasat proposed [redacted] (Ex. 53 at 7). The draft agreement [redacted]

[redacted] (*Id.*).

[redacted] (Ex. 53 at 8). [redacted] (Ex. 53 at 25). [redacted] (*Id.* at 9-11 (§§2.1-2.3)). [redacted] (*Id.* at 11 (§2.7)).

The draft agreement provides [redacted] (*Id.* at 8, 9, 28-31, 32-34). [redacted] (*Id.* at 28-31, 32-34).

In Section 3, [redacted] (*Id.* at 11-12). In Section 4, [redacted] (*Id.* at 13-15). [redacted] (*See*, *generally*, *id.* at 11-15). The draft agreement [redacted] (*Id.* at 15 (§5.1)).

## II. LEGAL STANDARD

Article III standing implicates the Court's subject-matter jurisdiction. *Lone Star Silicon Innovations LLC v. Nanya Technology Corp.*, 925 F.3d 1225, 1234 (Fed.Cir. 2019). For patent infringement lawsuits, in general, the question for the constitutional injury-in-fact inquiry is "whether a party has *an* exclusionary right." *A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, 176 F.4th 1326, 1332 (Fed.Cir. 2026) (*citing Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed.Cir. 2024) (emphasis in original)). "A patent owner has exclusionary rights as a baseline

matter unless it has transferred all exclusionary rights away." *Intell. Tech*, 101 F.4th at 816. Furthermore, a party "who possess[es] 'exclusionary rights' in a patent suffer[s] an injury when their rights are infringed." *Lone Star*, 925 F.3d at 1234. An assignment conveying all rights in a patent, including the right to collect royalties, is therefore sufficient to establish constitutional standing at the pleading stage. *Id.*

Statutory standing[1] under 35 U.S.C. §281 is a separate question from Article III constitutional standing. *A.L.M.*, 176 F.4th at 1332. "Article III asks whether the plaintiff has suffered a constitutionally cognizable injury, while Section 281 asks whether the plaintiff qualifies as a 'patentee' entitled to sue for infringement—typically by determining whether, in the case of a patent owner, it has transferred away, or in the case of a licensee, it has been transferred 'all substantial rights' in the asserted patents." *Id.*

Under 35 U.S.C. §281, only a "patentee" may bring a civil action for infringement. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed.Cir. 1995). The term "patentee" includes both the original patentee and its successors in title. 35 U.S.C. §100(d). Thus, an assignee holding legal title to a patent may sue for infringement in its own name. *Lone Star*, 925 F.3d at 1229; *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed.Cir. 2020); *Crown Die & Tool Co. v. Nye Tool & Mach. Works,* 261 U.S. 24, 40-41 (1923) (The "legal owners" of a patent who can bring a lawsuit are "the patentee, his assignee, his grantee, or his personal representatives;...."); *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1341 (Fed.Cir. 2006) ("The essential issue regarding the right to sue on a patent is who owns the patent.").

When the plaintiff is not the original patentee, the central question is whether the transfer

[1] Statutory standing does not implicate subject-matter jurisdiction. *Lone Star*, 925 F.3d at 1235 (*citing Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)).

of patent rights constitutes an assignment or merely a license. *Lone Star*, 925 F.3d at 1229. "A transfer of [the entire patent] is an assignment and vests the assignee with title in the patent, and a right to sue infringers." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed.Cir. 1995) (*citing Waterman v. MacKenzie*, 138 U.S. 252, 255 (1891)); *see also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed.Cir. 2000). Ownership, and particularly the location of the right to sue, is therefore central to the standing analysis. *Aspex*, 434 F.3d at 1341–42. Ordinarily, the party holding legal title when the infringement occurred must bring the infringement claim. *Crown Die*, 261 U.S. at 40–41. A subsequent owner may recover for past infringement when it also receives an assignment of the corresponding accrued claims. *Id.* at 44. A transfer of the entire patent constitutes an assignment that vests the assignee with legal title and the right to sue. *Rite-Hite*, 56 F.3d at 1551 (*citing Waterman*, 138 U.S. at 255); *see* 35 U.S.C. §261; *Schwendimann*, 959 F.3d at 1072 ("[A]n assignee is the patentee and has standing to bring suit for infringement in its own name." (*quoting Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir. 1998))).

"To confer patentee status to the assignee, an assignment must be documented in an 'instrument in writing.'" *Schwendimann*, 959 F.3d at 1072 (*citing* 35 U.S.C. §261).

A patentee can fail to meet the statutory requirements of §281 but still meet the requirements for Article III constitutional standing. *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1324 (Fed.Cir. 2021).

## III. ARGUMENT

PAYG has both constitutional and statutory standing because a written assignment conveyed to PAYG all right, title, and interest in the '127 Patent, including all enforcement rights and claims to sue for past, present, and future infringement and damages. Viasat neither addresses nor challenges that Assignment. Instead, it relies on agreements that do not cover the '127 Patent, incomplete evidence concerning the Discord Agreement, and a draft settlement agreement that

confirms only PAYG has the right to license and enforce the patent. PAYG has all substantial rights for Article III standing and holds legal title sufficient to sue as the "patentee" under §281.

Viasat's motion therefore lacks factual and legal support and unnecessarily multiplies the proceedings. It burdens the record with largely irrelevant exhibits, publicly filed an FRE 408 confidential settlement document from this case, seeks to pursue jurisdictional discovery while ignoring the recorded Assignment, and refused to withdraw the motion in view of the Amended Complaint. The Court should deny the motion and jurisdictional discovery and should award PAYG its reasonable fees and costs under 28 U.S.C. §1927 and the Court's inherent authority.

### A. PAYG has Constitutional and Statutory Standing Because It Was Assigned All Right, Title, and Interest in the '127 Patent Including the Right to Sue and Collect Damages, It Suffered Injury in Fact, and It is the "Patentee"

The written Assignment to PAYG dated December 5, 2022, assigned the title of the '127 Patent and the right to sue to PAYG. In the Assignment, PAYG was assigned "all right, title, and interest" to the '127 Patent and is therefore the owner of the '127 Patent. (Ex. E at 2); *Speedplay*, 211 F.3d at 1250 ("A party that has been granted all substantial rights under the patent is considered the owner…."); *Rite-Hite*, 56 F.3d at 1551 (A conveyance of "the entire patent" "is an assignment and vests the assignee with title in the patent, and a right to sue infringers"); *Waterman*, 138 U.S. at 255. As successor in title to the '127 Patent when the complaint was filed, PAYG is a "patentee" and has the right to sue Viasat for patent infringement. 35 U.S.C. §100(d); 35 U.S.C. §281.

Furthermore, PAYG was assigned all right, title, and interest to "all causes of action and other enforcement rights" for the '127 Patent including "all causes of action and other enforcement rights" for "(1) damages, (2) injunctive relief, and (3) any other remedies of any kind for past, current, and future infringement…." (*Id.*). As the sole entity assigned the right to sue for infringement, PAYG suffered a constitutional injury in fact when Viasat infringed the asserted claim of the '127 Patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed.Cir. 2007).

PUBLIC - REDACTED

PAYG is the sole assignee of all right, title, and interest in the '127 Patent and the sole assignee of the right to sue for infringement and collect damages for the '127 Patent and therefore has constitutional and statutory standing to bring this suit for infringement of the '127 Patent. *Crown Die*, 261 U.S. at 40–41; *Waterman*, 138 U.S. at 255; *Rite-Hite*, 56 F.3d at 1551; *Lone Star*, 925 F.3d at 1229; *Morrow*, 499 F.3d at 1340 ("a patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement in its own name."). PAYG has not assigned any of these rights away. (Rothschild Decl. ¶¶2-4).

The written Assignment, which was publicly recorded on May 3, 2023, with the USPTO, was also attached to the Amended Complaint. (Dkt. 31 at Ex. C). Viasat does not dispute the validity or the scope of the written Assignment of Patent Rights to PAYG.[2]

### B. The Other Agreements and Draft Agreement Raised by Viasat Are Not Relevant to Standing

Viasat argues that there are four global licenses (including the draft agreement) that show "the unfettered ability of PAM and Mr. Rothschild to grant" licenses to the '127 Patent. (Dkt. 16 at 11). However, two of the agreements are facially irrelevant to the '127 Patent, Viasat guesses about one agreement, and the draft agreement contradicts Viasat's assertions.

#### 1. The Valve Agreement Was Directed to a Limited Set of Patents That Did Not Include the '127 Patent

Viasat misleads the Court by arguing that the Global License Agreement with Valve is relevant to the '127 Patent or PAYG. (Dkt. 16 at 3-4). The Valve Agreement does not include the '127 Patent or PAYG. As explained above, "Licensed Patents" in the Valve Agreement is limited

[2] Particularly in view of Viasat's decision to continue with its current motion and not address the assignment, Viasat has forfeited any right to challenge the assignment. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief... are waived."); *Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995)("Issues that are not raised and argued in his initial brief are abandoned.").

to two patent lists totaling 35 patents, but neither list includes the '127 Patent or any related patent. (*Supra* §I.C). Furthermore, the Valve Agreement was directed to "patents on which Inventor [Mr. Rothschild] is the named inventor." (Dkt. 16, Ex. 48 at 1). The inventors of the '127 Patent are Harold S. Wills and David A. Steinberg, not Mr. Rothschild. (Dkt. 31 at Ex. A). Furthermore, PAYG was not formed until over four years after the Valve Agreement was executed, and PAYG was not assigned the '127 Patent until six years after the Valve Agreement was executed. (Ex. A; Ex. E). The Valve Agreement therefore has no relevance to whether PAYG has standing to sue for infringement of the '127 Patent.

**2. The GNOME Agreement Was Also Directed Only to Patents for Which Mr. Rothschild is the Inventor that Did Not Include the '127 Patent**

Viasat likewise misleads the Court by arguing that the GNOME Agreement is relevant to the '127 Patent or PAYG. (Dkt. 16 at 5-6). As explained above, the GNOME Agreement was limited to the '086 Patent and other patents owned by Rothschild Patent Imaging LLC, and patents that "name [only] Leigh Rothschild as an inventor." (Dkt. 16, Ex. 51 at 2; *supra* §I.D). The GNOME Agreement excluded "patents where Rothschild is named with another inventor or inventors." (*Id.*). Again, Mr. Rothschild is not an inventor of the '127 Patent. The GNOME Agreement therefore also has no relevance to whether PAYG has standing.

**3. Viasat's Speculation on the Discord Agreement Does Not Impact PAYG's Standing**

Viasat speculates as to the contents of the Discord Agreement by relying on an offer to settle and the cover page and signature pages of a Discord Agreement. (*Supra* §I.E). All that is shown is that PAM (PAYG's sole member and 100% owner) and Mr. Rothschild (Manager of PAYG) were signatories to the agreement. (*Id.*). There is no evidence that the Discord Agreement is inconsistent with PAYG owning all right, title, and interest in the '127 Patent, and the sole right to sue for infringement.

**4. The FRE 408 Draft Agreement Proposed to Viasat to Settle this Case Supports that PAYG is the Only Entity with Standing**

Viasat relies on an FRE 408 draft agreement that fails to support its motion. The draft agreement is consistent with the Assignment that PAYG has all right, title, and interest in the '127 Patent and that PAYG is the only entity with the right to sue and collect damages for infringement of the '127 Patent.

The email sent to Viasat to which the draft agreement was attached stated that [redacted] (Dkt. 16, Ex. 53 at 2). If PAM and Mr. Rothschild had the right to sign and make warranties and representations on behalf of companies they controlled, as Viasat contends, [redacted] The email therefore does not support Viasat's argument that PAM and Mr. Rothschild can grant licenses to patents or file suit for infringement of the '127 Patent in their own name for any of their affiliates.

The draft agreement also supports PAYG's standing to bring this lawsuit and rebuts Viasat's argument. In the draft agreement, [redacted] (*Supra* §I.F.2). Neither PAM nor Mr. Rothschild grant rights to the '127 Patent. (*Id.*).

Viasat makes a convoluted argument that under the definition of [redacted] so PAM and Mr. Rothschild necessarily control the '127 Patent. (Dkt. No. 16 at 8). However, the draft agreement [redacted] (Dkt. 16 at Ex. 53 at 9 (§2.1)). The draft agreement [redacted] (*Id.* at

28-31, 32-34). At most, the draft agreement is a belt-and-suspenders approach: [redacted]

Putting aside that neither PAM nor Mr. Rothschild have rights in the '127 Patent, even under Viasat's convoluted [redacted], such residual rights to PAM and Mr. Rothschild do not undercut that PAYG has an exclusionary right sufficient to have standing to sue. *A.L.M.*, 176 F.4th at 1334; *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1357, 1361 (Fed.Cir. 2010). The Federal Circuit has held that "the patent owner had not transferred away all rights, even under an exclusive license with rights to sublicense, where the patent owner retained the right to sue." *Intell. Tech*, 101 F.4th 807, 816 (Fed.Cir. 2024) (*citing Mann*, 604 F.3d at 1361). PAYG has the sole and exclusive right to sue for infringement of the '127 Patent.

Viasat's motion to dismiss argues that "a patent owner's right to sue is 'illusory,' and thus cannot support standing, when another party could moot any suit brought by the plaintiff by granting a royalty-free sublicense to the accused infringer." (Dkt. No. 16 at 1 (internal quotes and citation removed)). However, the draft agreement [redacted] It explicitly requires [redacted] (Dkt. No. 16, Ex. 53 at 15 (§5)). [redacted] (Dkt. No. 16 at 8). [redacted] (*Compare* Dkt. 16, Ex. 53 at 28-31, 32-34 *with* Ex. 53 at 25). Exhibit 53 therefore does not support Viasat's motion.

### C. Viasat Relies on Patent Cases in Which Written Agreements Assigned or Licensed Rights Away from the Plaintiff but No Such Agreements Exist Here

Viasat relies on cases that are readily distinguishable from this case. PAYG has established through the Assignment that it has standing to bring this suit for patent infringement against Viasat. Furthermore, there is no evidence of any written assignment of rights by PAYG to PAM, Mr. Rothschild, or anyone else. *Schwendimann*, 959 F.3d at 1072 (an assignment of patent rights must be in writing). These core facts undercut every patent case cited by Viasat.[3] Each patent standing case on which Viasat relies analyzes a written agreement that (1) was invalid, (2) involved retained rights, or (3) assigned away rights. No written agreement exists to undercut PAYG's standing.

### D. Even if PAM and Mr. Rothschild Had Some Residual Ability to Grant a Nonexclusive Licenses to the '127 Patent, PAYG Still Has Standing

Viasat's assertion that "Standing to Bring Infringement Claims… Cannot Exist if Another Party Can License the Patent-in-Suit" is the entire basis for its motion and is legally incorrect. (*See* Dkt. 16 at 9). In *Intell. Tech*, the Federal Circuit held the opposite: "A patent owner has exclusionary rights sufficient to meet the injury-in-fact requirement even where, without more, it grants another party the ability to license." 101 F.4th at 815. (*citing Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1345 (Fed.Cir. 2022) (observing but not holding that "[p]atent owners and licensees do not have identical patent rights, and patent owners arguably do not lack standing simply because they granted a license that gave another party the right to sublicense the patent to an alleged infringer")).

In *Intell. Tech*, a default occurred such that two companies (a licensee and the patent owner) shared the ability to license while the default existed. *Id.* This shared ability to license "did not

[3] Viasat cites many non-patent cases to support its standing argument. However, standing for patent infringement is unique to patent law and is therefore governed by Federal Circuit law. *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 617 (Fed.Cir. 2016).

divest [ ], the patent owner, of *all* exclusionary rights." *Id.* The patent owner "still suffers an injury in fact from infringement" even if another party can also license the patent and therefore the patent owner still had standing to sue. *Id.* Furthermore, "[w]hatever role another entity's ability to license has in the Article III inquiry for a patent owner, it is clear that assignment must be evaluated based on the actual transfer of rights, not mere ability." *Id.* at 817.

In this case, Viasat has not shown ***any*** actual transfer of rights to either PAM or Mr. Rothschild with respect to the '127 Patent, nor is there any. (Rothschild Decl. ¶¶2-4). At best, Viasat has alleged that either PAM as the sole member/100% owner of PAYG, or Mr. Rothschild as the Manager, is acting on behalf of PAYG for PAYG to grant rights under the '127 Patent. PAYG's rights are not illusory because PAM and Mr. Rothschild are only acting within their authority with respect to PAYG. PAYG is the sole owner of "all right, title, and interest" in the '127 Patent with the sole right to bring suit for infringement and to collect damages. (Ex. E).

Viasat's motion does not identify who, if not PAYG, has standing to sue for infringement of the '127 Patent. Neither PAM nor Mr. Rothschild have been assigned any rights with respect to the '127 Patent, nor have they been assigned any rights to sue or collect damages. The only entity with those rights is PAYG. PAYG has constitutional and statutory standing.

### E. Viasat's Motion Attached 53 Exhibits but Only Relied on Six Exhibits to Support its Argument of Lack of Standing; the Remaining Exhibits Only Serve to Harass PAYG, PAM, and Mr. Rothschild with Irrelevant Arguments

Although Viasat burdened the record with 53 exhibits, its standing argument relies on only six—Exhibits 48 through 53. (Dkt. 16 at 11–12 (*citing* §§B.1–B.4)). The other 47 exhibits neither refute PAYG's ownership of the '127 Patent nor identify any competing right to enforce it. They instead advance an insinuation-laden theory about PAM's and Mr. Rothschild's relationships with affiliated entities—a theory irrelevant to standing and calculated only to burden the record and harass PAYG, PAM, and Mr. Rothschild.

Viasat includes the public annual reports of 20 companies of which Mr. Rothschild is either an owner, manager, or director. (Dkt. 16 at Exs. 1-23). Other than Exhibits 1-3 with PAM's and PAYG's annuals reports and filing information, none of the companies in Exhibits 4-23 are alleged to have any rights in the '127 Patent and are irrelevant to whether PAYG has standing.

Viasat's exhibits include four transcripts from unrelated cases involving unrelated patents totaling well over 400 pages of transcript. (Ex. 24, 43, 44, 47). Viasat only generally cites a transcript or cites only a couple of pages yet includes the entire transcript. (*E.g.*, Dkt. 16 at 9 (cites three pages in Ex. 24 but includes entire 163-page transcript), *id.* (generally cites Ex. 43 (20 pages) and Exhibit 44 (entire 45-page transcript) to contend that Mr. Rothschild provides deposition testimony), *id.* at 2 (cites two pages in Ex. 47 but includes entire 213-page transcript)). There is no reason to include so many extraneous pages other than to be vexatious. Furthermore, although Viasat implies that Exhibit 47 is the testimony of PAYG, PAM, or Mr. Rothschild, it is not. The cited testimony in Exhibit 47 is hearsay testimony of an expert hired by an opposing party, not anyone related to PAYG, PAM, or Mr. Rothschild. (*E.g.*, Ex. 47 at 153-154 (heading identifying testimony of "Kimberly Schenk"), *id.* at 140-142).

Viasat included Exhibit 26 for the proposition that Mr. Rothschild opines on claim construction. Mr. Rothschild was opining on a patent for which he was the inventor.

Viasat includes Exhibits 24-46 to assert an improper motive from the facts that Mr. Rothschild (1) "approved all complaints" before they are filed, (2) conducts settlement negotiations on behalf of his companies, (3) analyzes asserted claims and claim constructions in their complaints before they file suit, (4) avers to good faith in filing a lawsuit, (5) provides declarations supporting venue, (6) verifies complaints, (7) knows the location of business records and maintains many if not all of them, and (8) serves as their designated agent for service of

process. (Dkt. 16 at 9 (*citing* Ex. 24-46)). None of these exhibits involve PAYG or the '127 Patent. Regardless, to the extent these assertions are applicable to PAYG, Mr. Rothschild, as Manager of PAYG, would reasonably be expected to perform these services on behalf of PAYG.

Viasat nevertheless relies on Exhibit 24 to suggest impropriety because PAM files a single tax return reflecting the activities of its subsidiaries, including PAYG, and money is distributed to an LLC's sole member. (Dkt. 16 at 9). However, PAYG's federal tax treatment and money flow are consistent with the IRS's default guidance for a single member LLC. Under that guidance, PAYG "is treated as an entity disregarded as separate from its owner," and its "activities should be reflected on its owner's federal tax return." (Ex. F). PAYG's W-9 likewise identifies PAYG as a "disregarded entity." (Ex. G). The tax reporting and money flow are consistent with the IRS guidance and is not improper.

### F. Jurisdictional Discovery Should be Denied Because Viasat's Motion Has Identified No Fact Calling PAYG's Standing into Question

Viasat has shown no evidence that raises the possibility that PAYG lacks standing. Viasat does not challenge the assignment of the '127 Patent to PAYG. PAYG has not assigned any right, title, and interest, the right to sue, or the right to collect damages to the '127 Patent to PAM, Mr. Rothschild, or any other entity. (Rothschild Decl. ¶¶2-4). Neither the Valve Agreement, GNOME Agreement, Discord Agreement, nor the draft agreement contradicts the assignment to PAYG.

Viasat has no basis to question PAYG's standing, and its request for jurisdictional discovery amounts to a fishing expedition. Viasat repeatedly objects to the confidentiality of agreements in its motion and in its opposition to PAYG's motion to seal Exhibit 53. Those objections support the inference that Viasat seeks PAYG's, PAM's, and Mr. Rothschild's agreements to place them on the public record in support of a case-dispositive motion, regardless of their relevance, and to argue against sealing them. Viasat's request for jurisdictional discovery

should therefore be denied.

### G. Viasat's Motion Unreasonably and Vexatiously Multiplies the Proceedings

Viasat's motion serves no purpose other than to harass PAYG, PAM, and Mr. Rothschild and it unreasonably and vexatiously multiplies the proceedings as demonstrated by the assertions in its brief. The first two pages of Viasat's motion discuss the structure of Mr. Rothschild's companies, which have nothing to do with PAYG or the '127 Patent. (Dkt. 16 at 1-2). The next four pages discuss litigations and global licenses that did not involve PAYG or the '127 Patent. (*Id.* at 3-6; *supra* §I.C-D). Viasat spends one page speculating about the Discord Agreement and another page discussing the FRE 408 draft settlement agreement PAYG sent to settle this case that does not support Viasat's lack of standing argument. (Dkt. 16 at 6-9; *supra* §I.E-F). After two pages quoting cases under the legally incorrect heading that standing cannot exist if another party can license the patent (Dkt. 16 at 9; *supra* §III.D), Viasat points to the Valve and GNOME Agreements, the incomplete Discord Agreement, and the draft agreement to conclude that PAYG lacks standing. (Dkt. 16 at 11-13; *supra* §III.B). Again, Viasat never acknowledges or disputes the assignment to PAYG of all right, title, and interest in the '127 Patent including the sole right to sue for infringement and collect damages.

Despite the lack of evidence supporting its motion, Viasat demands jurisdictional discovery. (Dkt. 16 at 13-15; *supra* §III.F). Viasat attached 53 exhibits to its motion including several entire transcripts of hundreds of pages, yet Viasat only relies on six exhibits to support its argument. (*Supra* §III.E). Viasat's motion also repeatedly demands that the case be dismissed "with prejudice," despite it being "well-settled that dismissals for lack of subject matter jurisdiction should be without prejudice." *Mullen v. Mullin*, No. 25-30604, 2026 WL 2607785, at *4 (5th Cir. Sept. 3, 2026); Rule 41(b), Fed.R.Civ.P. ("any dismissal not under this rule--***except one for lack of jurisdiction***, improper venue, or failure to join a party under Rule 19--operates as

an adjudication on the merits") (emphasis added).

Viasat's motion also publicly filed Exhibit 53, which is an email and draft settlement agreement requested by Viasat to settle this case, which were marked "CONFIDENTIAL FRE 408 SETTLEMENT COMMUNICATION." Viasat refused to withdraw the Exhibit and would only agree to stipulate to temporarily seal Exhibit 53 in exchange for PAYG agreeing to file an Opposed Motion to Seal Exhibit 53. (Dkt. 22, 24, 33). Even after the Court granted the stipulation to seal without requiring a motion to seal, Viasat insisted that PAYG file an opposed motion to seal or Exhibit 53 would be unsealed. (Dkt. 24 at 1).

During the parties' meet and confers, Viasat repeatedly emphasized that it made a factual attack under Rule 12(b)(1) so the Amended Complaint did not moot the motion to dismiss and a plaintiff is obliged to submit facts through an evidentiary method to sustain his burden of proof. (Bennett Decl. ¶9). PAYG was therefore required to submit the attached declaration and supporting exhibits despite Viasat having no evidence that PAYG lacked standing. PAYG informed Viasat that it would seek its attorneys' fees if Viasat did not withdraw its motion because the motion had no basis in fact or in law and unreasonably and vexatiously multiplies the proceedings. (*Id.* at ¶10). However, Viasat would not withdraw its motion. (*Id.*). PAYG therefore requests that the Court grant fees under 28 U.S.C. §1927 and the Court's inherent authority.

## CONCLUSION

For the foregoing reasons, PAYG has constitutional and statutory standing to sue and therefore the Court should deny Viasat's Motion to Dismiss and grant any further relief the Court deems appropriate, including PAYG's attorneys' fees and costs.

November 12, 2026

Respectfully submitted,

By: /s/David R. Bennett
David R. Bennett (IL Bar No.: 6244214)
Steven G. Kalberg (IL Bar No.: 6336131)
DIRECTION IP LAW
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Counsel for Plaintiff*
*Pay As You Go, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

*/s/ David R. Bennett*
David R. Bennett